## DUNNING *vs.* STEARNS.

An instrument by which one party agrees to sell and the other to purchase, certain personal property, at a specified price, and that the vendor shall retain a lien upon the property until the purchase price is paid, is in the nature of a chattel mortgage.

Where ashes, in an ashery, were among the articles embraced in such an instrument, but the number of bushels was left in blank; *Held* that the omission to specify the quantity did not render the instrument void for uncertainty; but that as between the parties, it was competent to prove by parol evidence the quantity intended.

*Held also,* that the instrument describing the ashes as then being in the ashery in the possession of the purchaser, and it not appearing that there was more than one ashery of which he was in possession, or that the vendor had any other ashes there than those in question, this was sufficient notice to the world, within the spirit of the act requiring chattel mortgages to be recorded, of the property intended, although the number of bushels was not mentioned.

It is competent for parties to agree, upon the sale and purchase of property, that the vendor shall retain a lien upon the property sold, as well as upon the article into which it shall be manufactured. And in such a case the lien will attach upon the new article as fast as it comes into existence.

How far the intermixture of property mortgaged, with other property, will destroy the lien of the mortgage.

DUNNING sued Stearns before a justice of the peace of Monroe county, in an action of assumpsit, and recovered a judgment; from which Stearns appealed to the county court of Monroe county. The trial came on in the county court in April, 1848, when Dunning proved the execution of a chattel mortgage by one James C. Emory to said Dunning, on nine barrels of potash, dated April 14, 1845, to secure the payment of $136,59, which

was duly filed on the 15th of April, 1845, in the town clerk's office of the town of Webster, where Emory resided; that the potash was turned out to Dunning the same afternoon that the mortgage was executed, and was afterwards taken by Stearns, by virtue of a writ of replevin, and sold by him.

The defendant then introduced in evidence, and proved, an instrument in writing in the words and figures following, viz. :

"This agreement, made the 26th day of February, 1845, between Nelson Stearns of the town of Webster, N. Y., and James C. Emory of the same place. The said Nelson hereby agrees to sell, and by these presents doth sell unto the same James C.          bushels of ashes now in the ashery in the possession of the said James C. at eight cents per bushel; also a quantity of lime at six dollars; also eleven potash barrels at one dollar each; also three cords of wood at eighty eight cents per cord. The said James C. hereby agrees to pay the said Nelson for the above in first quality potash packed in good oak barrels, and estimated at what the article is worth at Rochester, N. Y.—the potash to be delivered as fast as it is packed at the said Nelson's store in Webster, and from said store to Rochester or Fairport, as the said Nelson shall elect. It is further agreed that the said Nelson is to have and maintain a lien on said ashes, lime, and barrels, and also the potash made from the same, until the above claim is fully satisfied, and the said James C. is to go on as soon as may be and make the potash from said ashes, with all reasonable dispatch. The said James C. is to have the privilege of fixing on the price potash is selling for any one day after it is made until the first day of May next. The said James C. to be at one half the expense of inspection. It is further agreed, that if the said James C. can find a purchaser for the said quantity of potash, he may pay the above claim in cash, and dispose of the potash as he thinks best; or, if the said Nelson sells the whole or any part of the potash, he may do so, by accounting to the said James C. at the rate of seventy dollars per ton; but in case the said James C. does not find a purchaser, the price of the whole is to be governed by the Rochester market cash price.

Dunning *v.* Stearns.

In witness whereof the parties to these presents have hereunto set their hands and seals this 27th day of February, 1845.

J. C. EMORY.          [L. S.]<br>
NELSON STEARNS.    [L. S.]"

This agreement was executed and filed in the office of the town clerk of Webster on the day it bears date. It was also proved, on the part of Stearns, that Emory purchased of him 900 bushels of ashes, 11 potash barrels, 3 cords of wood, and a quantity of lime, and that the written contract was made between them shortly afterwards. That the ashes had not been meas- ured when the agreement was made; that they were to be meas- ured afterwards and the quantity inserted in the agreement, and the blank was left for that purpose; that the ashes were in the ashery. That previous to the first of April, 1845, Dunning knew of the sale of the ashes by Stearns to Emory, and that he, Dunning, got a copy of the agreement above set forth, before he took the ashes away on his chattel mortgage. Emory had 700 bushels of ashes in the same ashery, but in a separate place from those purchased by him of Stearns. They were all, with other ashes purchased by Emory of other persons, mixed and manu- factured into the potash in question, which was put into the barrels purchased by Emory of Stearns, and the lime purchased in like manner was used in making the potash. The evidence being closed, the county judge decided and charged the jury, that the identity of the property, and the lien of Stearns by vir- tue of his mortgage, was lost and destroyed by the mixture above mentioned in manufacturing the same, and that he had therefore failed to make out any defense to the suit; and he directed the jury to find a verdict for the plaintiff; to which decision and charge the counsel for Stearns excepted. The jury found a verdict for the plaintiff for $100, upon which the county court rendered judgment with costs. From this judgment the defend- ant appealed to this court.

*S. Mathews,* for the appellant.

*J. D. Husbands,* for the respondent.

*By the Court,* WELLES, J.   The agreement between the defendant and Emory, of the 26th of February, 1845, was in the nature of a chattel mortgage, upon the ashes, lime and barrels. (*McComber* v. *Parker*, 14 *Pick.* 497.   *Langdon* v. *Buel*, 9 *Wend.* 80.)   It was put on the files of the town clerk of the town of Webster before the execution of the chattel mortgage from Emory to the plaintiff.   But it is urged, that as respects the ashes, it was void for uncertainty, as the quantity of ashes is not mentioned; and that it was not competent to prove by parol the quantity intended.   As between the parties to the instrument it is abundantly settled that such proof was admissible. (*Fisk* v. *Hubbard*, 21 *Wend.* 651, *and cases cited by Cowen, J.*)

Can strangers, or creditors of Emory, take advantage of the defect ?   Did it give notice to the world, within the spirit of the act requiring chattel mortgages to be filed, of the property intended thereby to be sold by Emory to Stearns, and upon which the latter retained a lien ?   If it did it was sufficient.   The maxim is, *Ut res magis, valeat quam pereat.*   The ashes are described as the ashes then being in the ashery in the possession of Emory.   It did not appear that there was more than one ashery of which Emory was in possession, or that Stearns had any other ashes there than those in question.   It seems to me, therefore, that the fair intendment is that the ashes described were all that Stearns had in that ashery.

It is further contended that the lien created by the instrument in question between Stearns and Emory, of February 26, 1845, was lost and destroyed by the change in the articles, produced by the process of manufacturing them into potashes, and that it did not and could not extend to the manufactured article, because that was not in existence at the time it (the lien) was created. This might be so, if it were not for the language of the instrument.   (*Sillsbury* v. *McCoon*, 6 *Hill*, 425 ;   *S. C.* 4 *Denio*, 332.) The language referred to is the following :   " It is further agreed that the said Nelson is to have and maintain a lien on said ashes, lime and barrels, and also the potash made from the same, until the above claim is fully satisfied."   It was clearly the intention of the parties to the agreement to create a lien, as well upon the

potash to be manufactured, as upon the articles out of which it should be made; and I think it was competent for them to do so. It was an agreement to hypothecate the products of the particular property pledged, and the lien would attach upon the new article as fast as it came into existence. (*Story on Bail.* § 294. 1 *Domat, b.* 3, *tit.* 1, § 1, *art.* 5.)

It is furthermore objected that the intermixture of the ashes mortgaged with other ashes of Emory, destroyed the lien. It does not appear that the defendant knew of or consented to the mixture; and in such case the ashes of Emory which he mixed with those mortgaged, would, by the law on the subject of confusion of goods, become accessorial to the mortgaged property, and come under, and be subject to the lien and operation of the mortgage. If the defendant had consented to the mixture, the effect would have been to make him tenant in common with Emory of the ashes, after the mixture; and for the purpose of deciding this appeal the consequence would be the same. The county judge decided that "the identity of the property and lien of the defendant by virtue of his mortgage was lost and destroyed by the mixture above mentioned, in manufacturing the same, and that the defendant had therefore failed to make out any defense to the suit." In this I think he erred; and the judgment should be reversed, and a new trial in the county court should be ordered, with costs to abide the event.

Ordered accordingly.

———————•●•———————

SAME TERM. *Before the same Justices.*