Brown Cracker & Candy Company v. City of Dallas.

No. 2256.    Decided May 17, 1911.

**1.—Bawdy House—Reservation Limits—Penal Code—City Ordinance.**

A city ordinance enacting that all bawdy houses should be prohibited within the city except within designated limits, within which they should be confined, permits their existence within such limits and is in conflict with article 361, Penal Code which prohibits and suppresses them.    (Pp. 292-295.)

**2.—Same—Constitutional Law—Suspension of Statute.**

The Constitution, article 1, section 28, forbids the suspension of laws of the State except by the Legislature, omitting the words "or by its authority," contained in previous Constitutions.    Under this provision the attempt to confer upon municipal authorities by charter the power to segregate bawdy houses and legalize their existence within certain limits in a city (Act of April 18, 1907, Laws, 30th Leg., p. 246; Penal Code, arts. 359, 359a, 361, 362, 362a, 362b; Charter of City of Dallas, art. 2, sec. 3), was beyond the power of the Legislature, since it conferred on such authorities, if given effect, the right to suspend a penal law of the State within a part of the city.    (Pp. 294, 295.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

The company sued the city of Dallas and appealed from a judgment for defendant, obtaining writ of error on its affirmance.

*William H. Clark,* for plaintiff in error.—Under the Constitution of Texas, article 1, section 28, declaring that no power of suspending laws shall be exercised except by the Legislature, the Legislature has alone the power of suspending the operation of articles 359-362, 363 of the Penal Code, and the Legislature, in exercising the power, must make the suspension general and can not suspend said General Laws for individual cases, like Dallas, or for particular localities, as the proposed Dallas "reservation," nor delegate authority to the city of Dallas to suspend said General Laws of the State as to its prostitutes in certain territory designated within its corporate limits in the State of Texas; and therefore the Dallas "reservation" ordinance is unconstitutional.    Constitution of Texas, 1876, art. 1, sec. 28; Charter of city of Dallas, sec. 2, art. 2; Penal Code of Texas, arts. 359-362, 363; Rev. Stats., art. 2989, sec. 3, as amended by sec. 1 of the Acts of 1909; Cooley on Constitutional Limitations, 558; McDonald v. Denton (Houston "reservation" case), 132 S. W., 823; San Antonio v. Schneider (bawdy house case), 37 S. W., 767; Burton v. Dupree (Waco bawdy house case), 19 Texas Civ. App., 275; Coombs v. State (bawdy house case), 38 Texas Crim., 684; Ex parte Patterson (Texas), 42 Texas Crim., 256; Ballard v. City of Dallas, 44 S. W., 864; Clarke v. State (Texas), 46 Texas Crim., 566; Crowley v. City of Dallas, 44 S. W., 865; Ex parte Knox, 39 S. W., 670; Ex parte Wickson, 47 S. W., 643; Leach v. State, 36 Texas Crim., 248; Ex parte Fagg (Texas), 44 S. W., 294; Bohnny v. State, 2 S. W., 886, 21 Texas Crim., 597; Lynn v. State, 33 Texas Crim., 153; Ex parte Vance, 42 Texas Crim., 619; Mantell v. State (Dallas pure food case), 117 S. W., 855; City of Austin v. Cemetery Assn., 87 Texas,

330; Ex parte Solomon (Cal.), 27 Pac., 757; Robinson v. Franklin (Tenn.), 34 Am. Dec., 625; Loeb v. City of Attica (Ind.), 42 Am. Rep., 494; Hewlett v. Camp (Ala.), 20 So., 137; State v. Godfrey (W. Va.), 46 S. E., 185; State v. Clarke (Mo.), 14 Am. Rep., 471; State v. Alleson (Minn.), 5 N. W., 959; In re Baxter, 12 R. I., 13; State v. McCoy (N. C.), 21 S. E., 690.

The power to regulate, colonize and segregate contemplates. and implies the continued existence of bawdy houses in the "reservation," which is prohibited there and everywhere in Texas by articles 359-361 of the Penal Code. The term "regulate" implies "arrangement and existence in proper order," and its synonyms are "to govern," "to direct," "to rule," "to conduct;" which, in the case of bawdy houses, is prohibited by the State law. State v. McCann, 72 Tenn. (4 Lea.), 1, 13; Anderson v. City of Wellington (Kan.), 19 Pac., 719, 723; Hedding v. Gallagher (N. H.), 76 Am. St. Rep., 204; United States v. Harris, 26 Fed. Cas., 185, 193; Gas Works v. Hare (Kan.), 67 Pac., 444; Fisher v. Brower (Ind.), 64 N. E., 614, 618; Packing Co. v. Chicago (Ill.), 30 Am. Rep., 545; Minturn v. Larue, 64 U. S. (23 How.), 435, 436; City of New York v. Mt. Pleasant Cemetery Co. (N. J.), 33 Atl., 396, 397; St. Johnsbury v. Thompson (Vt.), 9 Atl., 571, 573; The Laundry Cases, 22 Fed., 701, 703; Ex parte Bell, 19 Fla., 608, 614; Richards v. City of Bayonne (N. J.), 39 Atl., 708, 709.

*James J. Collins, Smith, Robertson & Robertson, Lee Richardson* and *Barry Miller,* for defendant in error.—It was competent for the Legislature, under the Constitution, to authorize the passage of such ordinance when granting to the city of Dallas a special charter, and to further authorize the passage of such ordinance when enacting the Penal Code, and defining the territory over which such Code should operate, and such ordinance, when passed, pursuant to the express authority of the city charter and the said Penal Code, can not legally be considered or deemed to be in conflict with the provisions of said Code. Subdivision 4, section 3, articles 2 and 12, of the City Charter (being special Act of 1907); article 362a of General Acts of 1907, amending article 359 of the Penal Code; In re Garza, 28 Texas Crim., 381; Henderson v. Galveston, 102 Texas, 163; Ex parte King, 52 Texas Crim., 383; Cohen v. Rice, 101 S. W., 1053; Paul v. State, 48 Texas Civ. App., 25; Williams v. State, 52 Texas Crim., 371; Garonzik v. State, 50 Texas Crim., 533; Ex parte Abrams, 56 Texas Crim., 465; George L'Hote v. City of New Orleans, 51 La. Ann., 93, 44 L. R. A., 90, 177 U. S., 587, 588; Cooley's Constitutional Limitations (7th ed.), p. 279; Abbott on Municipal Corporations, sec. 537, p. 1343; 1 Modern Law of Municipal Corporations, 110, sec. 105, and p. 494, sec. 522; McQuillon on Ordinances, sec. 215, p. 343, and authorities cited in note; Subdivision 29 of article 14, charter of the city of Dallas, which says: "The provisions of this Act in so far as they may conflict with any State law shall be held to supersede the said law to that extent, and it shall not be held invalid on account of such conflict;" People v. Hanaran, 75 Mich., 611, 4 L. R. A., 751;

State v. Clark, 54 Mo., 17, 14 Am. Rep., 571; McGrady v. Terrell, 98 Texas, 427; Territory v. Whitney, 17 Hawaii, 174.

The Legislature has plenary authority over the creation of municipal corporations and the creation of a municipal corporation having a population of more than ten thousand inhabitants is specially authorized by section 5 of article 11 of the Constitution, and such provision of the Constitution authorizing the creation of such corporation is regarded as an exception to the express limitations found in other provisions of the Constitution. Southwestern Tel. Co. v. City of Dallas, 131 S. W., 80; Brown v. City of Galveston, 97 Texas, 1; Smith v. Grayson County, 18 Texas Civ. App., 156; City of Houston v. Stewart, 99 Texas, 67; City of Oak Cliff v. State, 77 S. W., 24.

The powers conferred upon the city of Dallas by its special charter, having been passed pursuant to a special provision of the Constitution, supersede the provisions of the State law, and the exercise of such powers are not considered as suspending a State law. Subdivision 29, article 17, charter of the city of Dallas, Act of 1907 (which provides that the provisions of said charter shall supersede the said State law to the extent that it may be in conflict therewith); McQuillon on Ordinances, sec. 215, p. 343, and notes; Cooley's Con. Lim. (7th ed.), p. 279; Paul v. State, 48 Texas Civ. App., 25; Williams v. State, 52 Texas Crim., 371; In re Garza, 28 Texas Crim., 381; Ex parte Abrams, 56 Texas Crim., 465; Ex parte King, 52 Texas Crim., 383.

It is the purpose of the Constitution that the grant of power in the charter of the city, having more than ten thousand inhabitants, shall be complete without reference to any other law, notwithstanding it would be easy to provide for the exercise of the greater number of the privileges granted to such city by a general law applicable alike to all of them. Dallas v. Western Electric Co., 83 Texas, 245; Dallas Cons. El. St. Ry. Co. v. City of Dallas, 95 Texas, 268; Association v. Pierren Heirs, 10 Texas Civ. App., 457; Southwestern Tel. Co. v. Dallas, 135 S. W., 80; Brown v. Galveston, 97 Texas, 1; Storey v. Woessner, 47 S. W., 837.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Henry Hatcher, for himself and other citizens of the city of Dallas, instituted this suit in the Fourteenth District Court in and for Dallas County against the city of Dallas and its mayor, S. J. Hay, and its commissioners, Harry L. Seay, D. F. Sullivan, William Doran and C. B. Gillespie. It is alleged that all of the said plaintiffs own property contiguous to the district which is embraced in the description contained in the ordinance hereafter mentioned.

It is alleged in the said petition that the charter of the city of Dallas contains the following provision:

"To prohibit and punish keepers and inmates of bawdy houses and variety shows, to prevent and suppress assignation houses and houses of ill fame; and to regulate, colonize and segregate the same; to determine such inmates and keepers as vagrants and provide for the punishment of such persons."

It is further alleged that under and by authority of the said charter provision said commissioners enacted this ordinance:

"Section 1.    That all bawdy houses and the inmates thereof, as defined by law, are hereby prohibited in any part of the city of Dallas except the district and territory hereinafter designated, within which district in accordance with article 362a of the Penal Code of the State of Texas, they shall hereafter be confined, which said district and territory is bounded as follows, to wit:"    .  .  .

It is also alleged that the officers above named were proceeding to make publication of the said ordinance as required by the said charter in order that the same may be put into effect, and, if not prevented from so doing, the said ordinance would become effective in the said city of Dallas and that thereby there would be a district created in which bawdy houses, houses of prostitution, and the like, would be permitted to be established and maintained.    The application for writ of error goes elaborately into a discussion of the case, quoting portions of the charter that are pertinent to the issue.    It is alleged in the petition that the real estate near to the district described in the ordinance would be greatly depreciated in value by reason of the presence of said houses as resorts for immoral persons and criminal characters of different kinds and that the petitioners would be greatly damaged, because they would not be able to rent or sell their property at reasonable prices.    The Brown Cracker & Candy Company specially alleges damages in the fact that it has a large business in the vicinity of the said district in which it employs a large number of respectable females, whom the company would not be able to employ, and it could not secure suitable and proper help to carry on its business in the neighborhood of such reservation as that to be created by the ordinance.

The court sustained a general demurrer and dismissed the petition, from which the Brown Cracker & Candy Company alone appealed to the Court of Civil Appeals, and that company alone made application for writ of error to this court, which was granted.

The charter of the city of Dallas contains this language:    "That no ordinance shall be enacted inconsistent either with the laws of the State of Texas, or inconsistent with the provisions of this Act." This section of the charter expresses no more than was before the general rule of law.    1 Dill Corp., sec. 319.    If, therefore, the ordinance sought to be enjoined is in conflict with article 361, Penal Code, as amended in 1907, the ordinance can not be sustained. Article 361 reads:

"Any person who shall, directly or as an agent for another, or through any agent, keep or be concerned in keeping or aid or assist or abet in keeping a bawdy house or a disorderly house, in any house, building, edifice or tenement, or shall knowingly permit the keeping of a bawdy house or a disorderly house in any house, building, edifice or tenement owned, leased, occupied or controlled by him, directly as agent for another, or through any agent, shall be deemed guilty of keeping or being concerned in keeping or knowingly permitted to be kept, as the case may be, a bawdy house or a disorderly house, as the case may be, and on conviction shall be

punished by a fine of two hundred dollars and by confinement in the county jail for twenty days for each day he shall keep, be concerned in keeping or knowingly permit to be kept, such bawdy or disorderly house."

The ordinance provides:

"That all bawdy houses and the inmates thereof, as defined by law, are hereby prohibited in any part of the city of Dallas except the district and territory hereinafter designated, within which district in accordance with article 362a of the Penal Code of the State of Texas, they shall hereafter be confined." . . .

By this language bawdy houses are prohibited in every part of the city of Dallas except the territory designated "within which district in accordance with article 362a of the Penal Code of the State of Texas, they shall hereafter be confined." This language compels such houses and their inmates to be and remain in that district, if they be in Dallas. The fourth section provides for regulating their conduct and guarding the inmates from disease, presumably to protect male visitors. An argument to demonstrate that the ordinance permits such houses to exist in that district would be inexcusable, the language is too plain to require explanation or application.

The ordinance is plainly in conflict with article 361, copied above, which denounces the penalty of extermination against all such places and houses and practices, and, upon conviction, inflicts a penalty of two hundred dollars and twenty days imprisonment upon all persons for each day they may be concerned in operating them. The antagonism between the ordinance and the law is as emphatic as that between life and death.

It follows logically that both laws can not be in force in that territory at the same time, and it devolves upon this court to determine which is to be maintained. As before stated, the law of the State, if in force, must prevail, and the inquiry now reaches that point, upon which the decision of this case must depend. In Davis v. State, 2 Texas Court of Appeals Reports, 425, it was held, in effect, that a provision in the charter of the city of Waco similar to that under consideration had the effect to suspend the State law on the same subject. In that case the court cites State v. Clark, 54 Mo., 17, which sustains that view of the question, but no reference is made to anything in their Constitution that would affect the question. Our Constitution at the time the Davis case was decided was materially different from article 1, section 28, of the present Constitution, which reads:

"No power of suspending laws in this State shall be exercised except by the Legislature."

The present Constitution omits at the end of this section the words, "or by its authority," which words were in that section of all former Constitutions. Under the former Constitutions it might have been, and probably should have been, held that the provision in the charter authorizing the city "to regulate and segregate;" etc., such houses, gave authority to such city to suspend the State law on the same subject, and that the enactment of such an ordinance would have that effect.

In Burton v. Dupree, 19 Texas Civ. App., 275, Judge Key in his usual succinct and forcible style points out the difference between the former and present provisions of our Constitution and states clearly the effect such change must have upon this question. Quoting the present section 28 of article 1 of the Constitution, that learned judge says:

"This section restricts the power to suspend laws to the Legislature, and expressly prohibits the exercise of such power by any other body. In view of this provision of the Constitution, it must be held (whatever may have been the power of the Legislature under former Constitutions) that that body can not now delegate to a municipal corporation or to anyone else, authority to suspend a statute law of the State. We therefore hold that the provisions of the Penal Code referred to were and are in force within the entire limits of the city of Waco, as well as elsewhere in the State, and that the lease contract in question, being knowingly made for the purpose of assisting in the violation of a penal law, is contrary to public policy, and not enforceable in the courts."

Since the amendment of the Constitution the Court of Criminal Appeals has held in accordance with Judge Key's opinion.

If it be admitted that the Legislature intended to confer upon the city of Dallas authority to suspend article 361 within the district laid out, that provision of the charter would be void, because in conflict with section 28 of article 1 of our present Constitution. The Legislature had no authority to delegate that power to the city.

We are of the opinion that the ordinance sought to be enjoined is void and that the District Court erred in sustaining the demurrer to plaintiff's petition and the Honorable Court of Civil Appeals erred in affirming that judgment. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed and the cause be remanded to be disposed of in accordance with this opinion.

*Reversed and remanded.*