### FRANK LYLE v. THE STATE.

No. 4309.    Decided February 28, 1917.

**1.—Pool Hall Law—Constitutional Law—Popular Vote—Local Option.**

The act of the Thirty-third Legislature, chapter 74, prohibiting the operation of pool halls, etc., by an election of the people in certain territory of the State, is unconstitutional. Following Swisher v. State, 17 Texas Crim. App., 441. Overruling Ex parte Francis, 72 Texas Crim. Rep., 304, and other cases. Prendergast, Judge, dissenting.

**2.—Same—Rule Stated—Legislative Power—Conflict of Decisions.**

The legislative branch of the government has full authority to pass laws except in the particulars wherein it is restricted by the Constitution of the United States .or forbidden by the express or implied provisions of the Constitution of the State, and unless it is clearly shown that the Legislature has exceeded its powers, the act will be upheld, and ordinarily, the court will not when once construed reopen the discussion; however, there being a conflict of decisions regarding the validity of this act in the courts of last resort, the question is reviewed.

**3.—Same—Stare Decisis—Rule Stated—Constitutional Interpretation.**

So far as the operation of the principle of stare decisis is concerned, the decisions of the Supreme Court rendered before the criminal jurisdiction was transferred to this court, are in effect decisions by this court, and the rule laid down in State v. Swisher, supra, as affecting this case, still obtains, and the Constitution of 1876 has not destroyed any implied prohibition against the passage of local option legislation by popular vote except as pointed out in said Constitution, and section 20, ·article 16, as well as section 23, article 16, etc., giving special authority to pass local option laws with reference to the prohibition of the sale of intoxicating liquors and the prohibition of stock running at., large, etc., only emphasize the intention of the framers of the Constitution that, no such general authority of the Legislature to pass local laws exist. ꟸrendergast, Judge, dissenting.

**4.—Same—Judicial Construction—Constitutional Law—Rule Stated.**

The rule of judicial interpretation of constitutional provisions is so forcible that where a new Constitution is adopted without change of the rules laid down by the courts, the construction is adopted by the new Constitution, and becomes a part of it to the degree that it can not be changed even by a statute expressly undertaking to do so. Following Powell v. State, 17 Texas Crim. App., 345.

**5.—Same—Grants to Municipal Corporations—Delegation of Legislative Authority—Distinction Drawn.**

There exists a distinction between legislation delegating authority to municipal corporations by charter privileges to determine by vote of the electors whether or not such privileges will be exercised, and legislation which authorizes the counties or subdivisions thereof by popular vote to adopt local option laws which are not authorized by the Constitution, but impliedly prohibited, and the decisions within our State emphasizing this distinction are well understood. Following Werner v. Galveston, 72 Texas, 22.

**6.—Same—Municipal Corporations—Local Self-government—Constitutional Law.**

Municipal corporations are generally recognized as instruments of local self-government, and their powers, duties, and limitations are well defined in the Constitution, and statutes thereunder are complete in themselves and are general laws of the State pertaining to municipalities, and simply provide the means of incorporating, and until the·amendment of 1912, the Legislature had the power under the express provisions of the Constitution to pass special charters for certain municipal corporations, but all have a general limitation upon their powers, and are not in conflict with the rule adopted in State v. Swisher, supra.

**7.—Same—Decisions Reviewed—Rule of Construction Adhered To.**

See opinion for a review of decisions in this State showing the proposition laid down in State v. Swisher, supra, that there was no legislative authority for the passage of the law like the pool hall law, except under the constitutional provisions, which specially limited such authority to the passage of laws prohibiting the sale of intoxicating liquors, etc., has been adhered to.

**8.—Same—Decisions of Other States—Marked Conflict—Constitutional History.**

There is a marked conflict in the decisions of the courts of other States upon this subject, but without entering into a further discussion of them, it suffices to say that none of them are in jurisdictions with a constitutional history like ours, nor in which there has been legislative construction or judicial interpretation such as obtains in this State.

**9.—Same—Stare Decisis—Decisions of Other States—Rule Stated.**

Rulings made under a similar legal system elsewhere may be cited and respected for their reasons, but are not necessarily to be accepted as guides, except in so far as their reasons commend themselves to the judicial mind. We are unable to find anything in our constitutional and judicial research upon which to base a conclusion that the decision of the Supreme Court in following the rule in Swisher v. State is unsound; on the contrary we have pointed out much that, in our judgment, supports its correctness. Following Ex parte Mitchell, 177 S. W. Rep., 953, and other cases.

**10.—Same—Power of Suspending Law—Constitutional Inhibition.**

Under section 28, article 1, Constitution of Texas, no power of suspending laws of this State shall be exercised except by the Legislature, and by section 8, article 7355, Revised Civil Statutes, the keeping of pool rooms or the use of pool tables for profit is expressly permitted, and this law is in force throughout the State, and as chapter 74, Acts of the Thirty-third Legislature, suspends this law which authorizes and licenses the maintenance of pool halls within any given territory, by delegating to a majority of the voters in such territory affected to do so, the latter is unconstitutional and invalid. Following Brown Cracker Co. v. Dallas, 104 Texas, 290, and other cases. Prendergast, Judge, dissenting.

**11.—Same—Rule Stated—Delegating Power to Suspend Laws.**

It is conceived that the reason supporting the decisions of this State under the constitutional provisions that the Legislature has no power to delegate its authority to suspend laws either to the people or to other agencies of government, are sound, and the framers of the Constitution were not without foresight as to the mischievous consequences that might follow from extending to the Legislature the power to delegate its authority to suspend laws. Prendergast, Judge, dissenting.

Appeal from the County Court of Donley. Tried below before the Hon. J. C. Killough.

Appeal from a conviction of violating the pool hall law in territory where the maintenance and operation of pool halls was prohibited by a majority of the qualified voters in said county; penalty, a fine of twenty-five dollars.

The opinion states the case.

*A. T. Cole,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was charged with and convicted of unlawfully operating a pool hall, prohibited by the people at an election as provided for in Chapter 74 of the Acts of the Thirty-third Legislature. The sole question is whether that Act of the Legislature is valid.

The legislative branch of the government has full authority to pass

laws except in the particulars wherein it is restricted by the Constitution of the United States or forbidden by the express or implied provisions of the Constitution of the State. And courts will not declare an Act unconstitutional unless it is clearly made to appear in its enactment the Legislature has exceeded its powers, and ordinarily where the courts have passed on the constitutionality of a statute they will not in a subsequent case reopen the discussion. This court and the Supreme Court having reached opposite conclusions regarding the validity of this Act, this court holding it valid and the Supreme Court holding it void, we feel constrained to review the subject.

The Act in question provides for the holding of elections in counties and subdivisions thereof to allow the qualified voters in the county affected to determine whether or not pool rooms shall be prohibited, and section 7 is as follows: "If a majority voting at such elections vote against the prohibition the court shall make an order declaring the results and have the same entered of record in its minutes." Section 13 provides that when the result of the election is declared against the operation of pool halls in a given territory, their maintaining and operation shall be an offense, punishable by fine or imprisonment.

The decision of the Supreme Court in so far as it holds that the Legislature was without authority to delegate to the qualified voters the question whether pool halls shall be maintained, is based on the decision of the Supreme Court in the case of State v. Swisher, 17 Texas, 441, and that of this court to the contrary is based on the propositions that the case mentioned has been overruled by the Supreme Court, and, by various decisions of courts in other States.

In the year 1854, while the Constitution of 1845, which contained no reference to local option laws, was in effect, the Legislature passed a law authorizing the determination of the question as to whether spirituous or vinous liquors should be licensed by a vote of the majority of the electors. The provisions of this Act were as follows:

"Be it enacted by the Legislature of the State of Texas, that from and after the passage of this Act there shall be no more licenses issued or granted to any person or firm in this State, authorizing said person or firm to sell spirituous or vinous liquors in less quantity than one quart, from and after the first Monday of August next, unless a majority of the qualified electors shall, at an election to be held for that purpose, as provided in the second section of this Act, cast their votes in favor of the granting such license.

"That it shall be the duty of the Governor to order an election to be held in each and every county in this State, to determine whether or not the sale of spirituous or vinous liquors in less quantity than one quart shall be abolished or continued; the said election shall be held on the first Monday in August next, and returns made as in all elections for county officers, and the vote shall be for or against said license, and if upon counting the votes thus cast and returned, there shall be

found to be a majority of votes cast for the license, then and in that case license may issue, upon proper application, to any person or firm as heretofore, to sell spirituous or vinous liquor in less quantity than one quart, but if a majority of votes so cast shall vote against the license, then there shall be no more license issued to any person or firm to sell as aforesaid."

The constitutionality of this Act was before the Supreme Court of this State in 1857, and it was held that the Act was unconstitutional. The language of the court in rendering the decision was in part as follows:

"The mode in which the Acts of the Legislature are to become laws is distinctly pointed out by our Constitution. After an Act has passed both houses of the Legislature; it must be signed by the Speaker of the House and the President of the Senate. It must then receive the approval of the Governor. It is then a law. But should the Governor veto it and send it back, it can only become law by being passed again by both houses, by a constitutional majority. There is no authority for asking the approval of the voters at the primary elections in the different counties. It only requires the votes of their representatives in a legislative capacity.

"But, besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislaure, we regard it as repugnant to the principles of the representative government formed by our Constitution. Under our Constitution, the principle of law-making is, that laws are made by the people, not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided, confusion and great popular excitement in the enactment of laws." State v. Swisher, supra.

At the time this decision was rendered the Supreme Court had appellate jurisdiction of both civil and criminal matters and was the one court of last resort. Subsequently, upon the creation of this court, the criminal jurisdiction was transferred to it. So far as the operation of the principle of stare decisis is concerned, the decisions of the Supreme Court rendered before its criminal jurisdiction was transferred are in effect decisions by this court.

After the Swisher case, supra, was decided, the Constitution of 1876 was adopted, and therein, in section 20, article 16, was conferred upon the Legislature the authority to pass a law authorizing the voters in given territory to determine whether or not the sale of intoxicating liquors should be prohibited therein. The terms of section 20, article 16, were as follows: "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." It was thereafter found that this article only authorized the

holding of such elections in counties and subdivisions thereof mentioned in section 20, and in 1891 that section was amended so as to add thereto the following words: "or such subdivision of a county as may be designated by the Commissioners Court of said county." The same Constitution of 1876 also provided by section 23, article 16, that the local option feature might be applied to the prohibition of the running at large of certain stock.

The decision of the Supreme Court in the case of State v. Swisher, supra, was referred to and approved by the same court in the opinion in the case of State v. Robinson, 19 Texas, 479. It is referred to again in the case of San Antonio v. Jones, 28 Texas, 19, decided in 1866. Referring to the case of State v. Swisher, the court uses the following language: *"The law of this case is unquestionably sustained by sound reason as well as the highest authority, and the question decided by it is regarded by us as correctly and conclusively settled."*

At the time the Supreme Court rendered the decision in the case of State v. Swisher, supra, the same question had been passed upon by the courts of last resort in a number of the States of the Union having Constitutions with provisions similar to the Constitution of 1845, which, as above stated, made no specific reference to the right of the Legislature to pass so-called local option laws. There was at that time a conflict of authority, the courts of some of the States holding that laws such as that under consideration in the Swisher case were authorized by the Constitution and others holding the contrary. Among those mentioned in the Swisher case as having been called to the court's attention in which similar laws had been held unconstitutional were the following: Bradley v. Baxter, 7 How., N. Y. Pr., 18, in Livingston's Law Magazine for June, 1854; Parker v. Com. Penn., 6 Bar., 507; Rice v. Foster, 4 Har., 479; Johnson v. Rich, 9 Barb., 630; People v. Collins, Sup. Court of Michigan, in Am. Law Register, August, 1854. It appears from the opinion also that the court was apprised fully that the Vermont court had reached a contrary conclusion. One of the cases which were considered by the Supreme Court in the decision of the Swisher case will illustrate the holding in the others. The case of Rice v. Foster, 4 Harrington, 479, decided by the Supreme Court of Delaware, passed upon an Act, the first section of which is as follows: "That on the first Tuesday in April, 1847, the citizens of the several counties in this State shall decide by their votes whether or not the retailing of intoxicating liquors shall be permitted in said counties." The other provisions of the Act provide for the form of ballots, the manner of holding elections, the prohibition if adopted by the requisite vote. The court in its decisions held the Act unconstitutional.

It is thus made apparent that the Supreme Court of this State in the Swisher case deliberately decided that there was an implied inhibition in the Constitution of 1845 against the passage of a local option law whereby the voters might determine by their vote whether or not the general law of the State providing for a license for the sale of

intoxicating liquors should be suspended or remain in force. From the reasoning upon which the decision is based and the citation of authorities which it considered in reaching its conclusion, it follows that the implied inhibition was applicable not only to laws prohibiting the sale of intoxicating liquors, but that it was general in its effect. A new Constitution was adopted in 1861 and another in 1869, in neither of which was there contained any express power given the Legislature to pass local option laws of a general character. During the years intervening between the decision in the Swisher case, supra, and the adoption of the Constitution of 1876, the Supreme Court of the State, as above pointed out, had on several occasions repeated its declaration of adherence to the rule declared in the Swisher case, and the Legislature, manifestly regarding such rule to inhibit the passage of local option laws such as that under consideration and that passed upon in the Swisher case, passed no such law until after the Constitution of 1876 was adopted, wherein there was given in article 16, section 20, the express power to pass such laws with reference to the prohibition of the sale of intoxicating liquors. The importance of legislative construction of constitutional provisions has often been recognized. Cordova v. State, 6 Texas Crim. App., 207. And in Powell v. State, 17 Texas Crim. App., 345, the rule that judicial interpretation of constitutional provisions is so forcible that where a new Constitution is adopted without change of the rule laid down by the courts, the construction is adopted by the new Constitution and becomes a part of it to the degree that it can not be changed even by a statute expressly undertaking to do so. The facts upon which this decision was based were so. In the Constitution of 1845 the term "jeopardy" was used. Before the adoption of that Constitution the same word had been used in former Constitutions, and its meaning judicially determined. After the adoption of the Constitution of 1845 the Legislature passed a statute declaring the term "jeopardy" to have a meaning therein given, and in the case of Powell v. State, the decision was that this statute was void, because the definition of "jeopardy" which it undertook to make was different from the meaning which the term had prior to the adoption of the Constitution and which the Constitution by its adoption without change of the term had made its own definition. Both by judicial interpretation and legislative construction, therefore, there was no implied power given by the Constitution to pass local option laws of the character passed upon in the Swisher case. On the contrary, there was an implied prohibition against the passage of such law.

In the adoption of the Constitution of 1876, if it had been the intention of the constitutional convention that framed the Constitution to destroy any implied prohibition against the passage of such law and to recognize in the Legislature general authority to pass them, the most expedient way to have given expression to this intention would have been to have included in the Constitution of 1876 a provision giving the general authority to pass such law. The fact that they did not

write into the Constitution such general authority, but, on the contrary, wrote into it special authority to pass local option laws with reference to the prohibition of the sale of intoxicating liquors and the prohibition of stock running at large strongly indicates that the intention of the constitutional convention was to delegate to the Legislature authority to pass such laws only with reference to the subjects mentioned in the special authority given and to keep in force the implied prohibition against the passage of such laws touching any other subject This intention is emphasized by the subsequent conduct of the legislative department of the government in that in 1883 it submitted to the people a constitutional amendment, section 3, article 7, of the Constitution so as to provide that a school district by a local option election might increase its taxing power. Again, in 1890, the Legislature submitted, and there was adopted, an amendment to section 9, article 8, of the Constitution providing for a local option election to increase the taxing power of counties, cities and towns for the purpose of public improvements. Again, in 1904, section 52, article 3, was amended, the amendment having been submitted by the Legislature and adopted by the people, providing for a local option election for the improvement of rivers and creeks, for irrigation and drainage, and for the construction of macadamized roads; and in 1906 section 9, article 8, was again amended authorizing a local option election for the maintenance of public roads. Various other amendments to the Constitution similar in their nature, all having the purpose of authorizing the Legislature to pass laws permitting the qualified voters in certain districts to determine questions by so-called local option elections, have been passed by the Legislature and submitted to the people. In order to increase taxing power in these districts it was necessary to have a constitutional amendment, but if the Legislature had the power, "which it attempted to exercise" in the pool hall case, of submitting the determination of questions of this character to a popular vote, it was unnecessary to have included in any of these amendments that part of them which sought to give the Legislature the power to submit the questions involved to a popular vote, and the fact that the Legislature sought in these amendments this authority indicates that in its judgment it did not possess it.

The existence of the Swisher case, supra, as an authority in the State against the validity of the law under consideration, is called in question by reason of the fact that there are decisions in this State holding that the Legislature exercises no unauthorized delegation of its authority when it grants to municipal corporations charter privileges giving to the corporations the right to determine by vote of the electors whether or not the privileges will be exercised. There exists a distinction between this character of legislation and that which was passed upon by the Supreme Court in deciding the Swisher case. The distinction between the two is well recognized, and by our own courts the soundness of the doctrine laid down in the Swisher case is affirmed and emphasized, and in the same case the other rule with reference to municipalities above

referred to is declared to exist. An instance of this is in the case of Werner v. Galveston, 72 Texas, 22, from which we quote as follows: "In State v. Swisher, 17 Texas, 441, this court held an Act of the Legislature which authorized the counties of the State to determine by popular vote whether liquor should be sold in their respective limits to be unconstitutional. But it does not follow from this that the Legislature has no authority to confer a power upon a municipal corporation and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed at the ballot box." Municipal corporations are generally recognized as instruments of local self-government, and throughout the constitutional history of Texas they have been so recognized. In the Constitution of 1876, their powers, duties and limitations are defined in a number of sections, particularly in article 11, and from an early day in this State there have been statutes permitting their incorporation and defining their powers. These statutes, generally speaking, have been a general law of the State classifying municipalities and permitting them to incorporate by the adoption of the provisions of these general laws. These statutes are complete in themselves and are general laws of the State pertaining to municipalities, and simply provide a means of incorporating, and until the adoption of the amendment of 1912 the Legislature had the power under the express provisions of the Constitution to pass a special charter for a municipal corporation within certain limitations relating to population, and some of these special charters have contained provisions that they should operate with the consent of the majority of the people of the corporation  All charters of this kind and those passed by general law and those adopted under the amendment of the Constitution of 1912 have a general limitation upon their power, which is expressed, and the last named amendment is subject to such limitations as may be prescribed *by the Legislature and providing that no charter or ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of the State.* This much has been stated to illustrate the distinction between a statute which gives to a municipal corporation the privilege of determining whether it will or will not do a particular thing by a vote of the people where it is prohibited from doing anything that will encroach upon the authority of the Legislature, and a law such as that under consideration which undertakes to authorize the people in a given locality to abrogate or suspend the operation of a State law in that locality by a vote of the people therein. Bearing this distinction in mind, the authorities in Texas and elsewhere touching the privilege of municipalities to decide matters by popular vote are in no sense in conflict with the rule adopted in this State by the Supreme Court in the case of State v. Swisher, supra.

Other cases cited as qualifying the rule laid down in State v. Swisher are Johnson v. Martin, 76 Texas, 737; Stanfield v. State, 83 Texas, 317; Graham v. Greenville, 67 Texas, 62. An examination of these cases

will disclose the fact that they do not qualify the rule adopted by the Supreme Court in the Swisher case in its application to the statute under consideration, but are distinguishable from it upon the same general ground as that above discussed with reference to the case of Werner v. City of Galveston. Illustrating the recognition of the existence of the rule adopted in the Swisher case, we quote from the decision by this court in the case of Ex parte Massey, 49 Texas Crim. Rep., 60:

"That is not the question here. In the case before us, the people had no inherent power to legislate on the subject of local option prior to the adoption of article 16, section 20. As early as the case of State v. Swisher, 17 Texas, 441, it was held that the Legislature could not delegate to voters of the people the power to pass laws, in the absence of some constitutional provision authorizing this. Judge Lipscomb, who rendered the decision says: 'But besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the representative form of government by our Constitution. Under our Constitution the principle of law making is that the laws are made by the people; not directly but by and through their chosen representatives. But by the Act under consideration this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided; confusion and great popular excitement in the enactment of laws.' This principle was reaffirmed in San Antonio v. Jones, 28 Texas, p. 19.

"It was not until the adoption of article 16, section 20, in the Constitution of 1876, that power was given in the organic law, authorizing the delegation of power to the qualified voters to enact local option in the territory therein mentioned." This opinion was written in 1906.

It is suggested that the opinion in Ex parte Massey was overruled in the cases of Edmundson v. State, 64 Texas Crim. Rep., 413, and Fitch v. State, 58 Texas Crim. Rep., 366. ' This statement should be qualified by the other facts, that the part of the opinion in Ex parte Massey which discusses the Swisher case, and which is above quoted, was not involved in either the case of Edmundson or of Fitch, and that their conflict with the Massey case is upon other grounds and upon a different point. Even if it be granted that the Massey case was overruled upon the particular question, the fact that a decision was rendered by this court as late as 1906 definitely adhering to the proposition that there was no legislative authority for the passage of a law like the pool hall law except under the constitutional provision which specially limited such authority to the passage of laws prohibiting the sale of intoxicating liquors, is of weight by showing the status of the rule in the Swisher case as recognized by this court at that time.

In holding the Act in question valid, this court, in the majority opinions in Ex parte Francis, 72 Texas Crim. Rep., 304, 165 S. W. Rep., 147, and in Ex parte Mode, 77 Texas Crim. Rep., 432, 180 S. W.

Rep., 708, cites many cases from the courts of other States supporting their conclusion and makes copious quotations from them. An inspection of these opinions will disclose the fact that many courts in other jurisdictions have reached the opposite conclusion, and in volume 1, Am. & Eng. Ann. Cas., p. 374, there are cited cases from California, Delaware, Indiana, Iowa and Washington, wherein similar laws have been held unconstitutional. We think that, considering the later cases decided by the courts in other States, the weight of numbers is in favor of the validity of similar laws. Enough has been said, however, to disclose the fact that there is a marked conflict in the decisions of other courts upon the subject. Many of them are rendered by divided courts, and courts of the same States have in many instances rendered conflicting opinions touching the matter. Some of them are under Constitutions having express provisions authorizing the passage of local option laws; some of them deal with subjects relating to municipal affairs. Without entering into a further discussion of them, it suffices to say that none of them are in jurisdictions with a constitutional history like ours, nor in which there has been a legislative construction or judicial interpretation such as obtains in this State.

It is said in Cooley's Const. Lim., p. 65, that "rulings made under a similar legal system elsewhere may be cited and respected for their reasons, but are not necessarily to be accepted as guides except in so far as their reasons commend themselves to the judicial mind." To the same effect is the text in Cyc., vol. 11, pp. 749-53, and cases there cited, and also the case of Alexander v. Bank, 47 S. W. Rep., 840.

The force of rulings on the same legal principle by courts of the same jurisdiction should control its subsequent decisions unless it is demonstrated that the prior decision was unsound. On this subject Chancellor Kent says: *"Where a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review, and never by the same court except for very urgent reasons and upon clear manifestation of error; and if the practice were otherwise, it would be leading us in perplexing uncertainty as to the law."* Kent's Commentaries, vol. 1, p. 475; Cooley's Const. Lim. (6th ed.), p. 64, and cases cited.

It is said in 36 Cyc., p. 1144, that "when a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally"; and this rule applies to the construction of Constitutions. Emery v. Reed, 65 Cal., 351; McChesney v. Hager, 104 S. W. Rep., 714; Eau Claire Natl. Bank v. Benson, 86 N. W. Rep., 604; Douglass v. Pike County, 101 U. S., 677, 25 Law Ed., 968.

The majority opinion of the Supreme Court of this State written by Chief Justice Phillips in the case of Ex parte Mitchell, 177 S. W. Rep., 953, rendered June 23, 1915, passing upon the statute in question, is as follows:

"The case presents the question of the constitutionality of the ref-

erendum Act of the Thirty-third Legislature, authorizing the qualified
voters of any county, or certain political subdivisions of a county, to
determine by an election whether pool rooms or pool halls should be
prohibited therein, and making it an offense to there operate or main-
tain them if the result of the election be in favor of their prohibition.

"The constitutionality of the Act is assailed upon two grounds:
(1) That it amounts to a delegation by the Legislature of its own
legislative power, imposed upon it by the Constitution, which it, alone,
must exercise, and which it may not commit to any other agency; (2)
that it authorizes the suspension of a general law of the State by the
voters of a county, or subdivision of a county, namely, the statute
licensing the operation of pool halls generally within the State, in vio-
lation of article 1, section 28, of the Constitution, which is, 'No power
of suspending laws in this State shall be exercised, except by the Legis-
lature,' an amendment of previous Constitutions which permitted such
suspension under 'the authority' of the Legislature.

"The Act is plainly unconstitutional, in our opinion, for both of
these reasons. We largely rest our decision as to the first question upon
State v. Swisher, 17 Texas, 441, where an Act of the Legislature, in
no way dissimilar in its effect from this one, was, upon this ground,
held unconstitutional by the first Supreme Court of the State. That
decision has never been overturned, and is the law upon the question.
The second question is equally well settled, according to our view, by
Brown Cracker & Candy Co. v. City of Dallas, 104 Texas, 290, 137
S. W. Rep., 342, Ann. Cas. 1914B, 504."

We are unable to find anything in our constitutional and judicial his-
tory upon which to base a conclusion that the decision of the Supreme
Court in following the rule in the Swisher case is unsound. On the
contrary, we have pointed out hereinabove much that, in our judgment,
supports its correctness.

If, however, the reasoning of the decisions of other States upholding
similar laws was so cogent as to demonstrate the unsoundness of the
conclusion reached by the Supreme Court that the Act in question is
void under the rule in the Swisher case, we would still be confronted
with section 28, article 1, of our Constitution, which reads as follows:
"No power of suspending laws in this State shall be exercised except
by the Legislature." In previous Constitutions the corresponding para-
graph read as follows: "No power of suspending laws in this State
shall be exercised except by the Legislature *or under its authority.*"
Section 8 of article 7355 of the Revised Statutes expressly permits the
keeping of pool rooms or the use of pool tables for profit. In other
words, by virtue of this article, the maintaining of a pool hall is not
only legal, but it is expressly made so, and the provisions of this law,
which is a general Act of the Legislature, are in force throughout the
State. Chapter 74 of the Acts of the Thirty-third Legislature does
not repeal this law, but it does provide that the maintenance of a pool
hall shall be an offense punishable by a fine and imprisonment in any

subdivision of the State in which by a majority vote of the voters therein the operation of pool halls shall be prohibited. In other words, the power of suspending the law which authorizes and licenses the maintenance of pool halls in any given territory is delegated by the Act in question to the majority of the voters in the territory affected. The provision in the Constitution quoted has been interpreted by the courts of this State in the following cases: Burton v. Dupree, 19 Texas Civ. App., 275, 46 S. W. Rep., 272; Arroyo v. State, 69 S. W. Rep., 503; Curtis v. Railway Co., 26 Texas Civ. App., 304, 63 S. W. Rep., 149; Ex parte Ogden, 43 Texas Crim. Rep., 531; 66 S. W. Rep., 1100; Ex parte Coombs, 38 Texas Crim. Rep., 648, 44 S. W. Rep., 854; Ex parte Powell, 43 Texas Crim. Rep., 391, 66 S. W. Rep., 298; Fay v. State, 44 Texas Crim. Rep., 381, 71 S. W. Rep., 603; McDonald v. Denton, 132 S. W. Rep., 825, 135 S. W. Rep., 1148; Brown Cracker & Candy Co. v City of Dallas, 104 Texas, 290, 137 S. W. Rep., 342; Leach v. State, 36. Texas Crim. Rep., 248, 36 S. W. Rep., 471; Crowley v. City of Dallas, 44 S. W. Rep., 865; Coombs v. State, 44 S. W. Rep., 854; Ex parte Fagg, 38 Texas Crim. Rep., 573, 44 S. W. Rep., 294; Ex parte Wickson, 47 S. W. Rep., 643; Ex parte Anderson, 46 Texas Crim. Rep., 372, 81 S. W. Rep., 973; Jannin v. State, 42 Texas Crim. Rep., 631, 51 S. W. Rep., 1126, 62 S. W. Rep., 419; Texas & P. Ry. Co. v. Mahaffey, 98 Texas, 392, 84 S. W. Rep., 646; Ex parte Smythe, 56 Texas Crim. Rep., 375, 120 S. W. Rep., 200; Burch v. State, 56 Texas Crim. Rep., 200, 120 S. W. Rep., 206; Phillips v. State, 56 Texas Crim. Rep., 220, 120 S. W. Rep., 207; Adams v. State, 56 Texas Crim. Rep., 199, 120 S. W. Rep., 208; McFarlin v. State, 123 S. W. Rep., 133; Ex parte Farnsworth, 135 S. W. Rep., 535. A complete analysis of all these cases will not be undertaken. Quotations from some of them, however, will illustrate the rule as declared in all of them.

In the case of Brown Cracker Co. v. Dallas, 104 Texas, 290, the question involved was the validity of an ordinance of the City of Dallas which segregated bawdy houses, impliedly licensing them to be maintained in confined districts of the city. It was contended that the authority to pass this ordinance was conferred upon the City of Dallas by a special charter enacted by the Legislature. It was asserted on the other hand that under article 361 of the Penal Code, bawdy houses were prohibited by the State law, and the question resolved itself into whether or not the legislative power delegated to the City of Dallas to pass an ordinance segregating and licensing bawdy houses would have the effect to authorize the city to supersede the operation of the provision of the Penal Code of the State in territory where they were permitted under the ordinance. The Supreme Court in the case mentioned, in an opinion rendered by Judge Brown, held that the legislative authority was exceeded in the charter mentioned. And the Court of Civil Appeals at Austin in the case of Burton v. Dupree, 19 Texas Civ. App., 275, decided the same point in construing a similar provision in the charter of the City of Waco.

In the case of McDonald v. Denton, reported in 132 S. W. Rep., 823, and 104 Texas, 206, 135 S. W. Rep., 1148, the question involved arose out of the fact that a number of women in the City of Houston were prosecuted as vagrants on the ground that they were common prostitutes and that under the State laws they were guilty of the offense of vagrancy. They sought an injunction to restrain the prosecution on the ground that under an ordinance of the City of Houston, authorized in its charter granted by the Legislature, they were licensed in the locality in Houston in which the offense occurred. The injunction was granted by the District Court, and upon appeal, both the Court of Civil Appeals and the Supreme Court held that it should not have been granted, adhering to the rule announced in Brown Cracker Company v. Dallas, supra, that the Legislature had no power to delegate to the City of Houston authority to suspend the operation of a State law in any part of the State.

The cases of Arroyo v. State, 69 S. W. Rep., 503, and Fay v. State, 44 Texas Crim. Rep., 381, involved the right of the City of Dallas, acting under legislative authority, to pass an ordinance providing that a saloon might remain open during certain hours on Sunday, and it was held that there being a statute in existence which required that the saloons should remain closed on Sunday, the attempt of the Legislature in the city charter to vest in the City of Dallas the authority by ordinance to suspend the operation of the State law in any part of the State was violative of the constitutional provision under consideration.

In the case of Ex parte Ogden, 43 Texas Crim. Rep., 531, there was a prosecution for a violation of an ordinance of the City of Beaumont, the offense being that he permitted the operation of a turf exchange or selling pools on horse races in his place of business. It was claimed that the ordinance was passed under legislative authority. This court held the ordinance void, because in conflict with the State law which licensed turf exchanges and pool selling on horse races. The opinion cites numerous authorities.

Granting the correctness of these decisions construing section 1, article 28, of the Constitution, the principle in the pool hall law is unsound. They so definitely establish the rule of construction in this State applying to the section of the Constitution mentioned that overruling them could only be justified, as said by Chancellor Kent, "upon very urgent reasons and clear manifestation of error." It is conceived that the reasons supporting the decisions of this State under the constitutional provision that the Legislature has no power to delegate its authority to suspend laws either to the people or to other agencies of government are sound. If the contrary were true and the principle sought to be applied in the pool hall law became a fixed rule in this State, it would be possible for the Legislature to delegate to the people of a given community the right to suspend the operation of the various police regulations adopted by the Legislature. The question, for example, as to

whether the Sunday laws or the pure food laws or other police regulations of the State would be operative in given localities would not be dependent upon the Act of the Legislature which passed the laws for the government of the entire State, but communities and subdivisions of the State would be permitted by popular vote to determine whether or not they would be governed by the law in question. The framers of the Constitution when they wrote section 28 of article 1 of the Constitution, abandoning the provision theretofore existing that laws might be suspended by the authority of the Legislature and asserted in the new Constitution that they could be suspended alone by the Legislature were not without foresight as to the mischievous consequences that might flow from extending to the Legislature the power to delegate its authority to suspend laws. Whatever considerations induced the framers of the Constitution to adopt the provision mentioned, it is a part of the organic law of the State; it has been upheld by the judicial decisions of the State and declared to inhibit the passage of laws such as Chapter 74 of the Acts of the Thirty-third Legislature.

The research, learning and power of expression exhibited by Judge Davidson of this court in writing the dissenting opinion in the cases of Ex parte Francis and Ex parte Mode, above mentioned, have so well covered the points considered in this opinion that the writer might well have refrained from going into a discussion of the subject. The importance of the question and the natural and proper reluctance of courts to declare statutes void have impelled the writer to review the subject, and having therefrom reached the conclusion stated, the judgment of the lower court is reversed and the cause ordered dismissed.

*Reversed and dismissed.*

PRENDERGAST, Judge (dissenting).—Judge Harper in Ex parte Francis, 72 Texas Crim. Rep., 304, 165 S. W. Rep., 147, and Ex parte Mode, 77 Texas Crim. Rep., 432, 180 S. W. Rep., 708, has so completely, both on reason and on authority, demonstrated the constitutionality of our pool hall law, it is entirely useless for me to again discuss the question. In my judgment, the opinions by him in those cases are unanswered and unanswerable. If my brethren are not convinced by those great opinions, and by the opinions of the great judges and courts of every other State in the United States cited by him, then "neither will they be persuaded though one rose from the dead."

Evidently Judge Morrow has overlooked a universal and cardinal principle of the powers of the State Legislatures, and specially of our State. And that is, as expressed by Presiding Judge White, in Holly v. State, 14 Texas Crim. App., 505: "The State Constitutions are only limitations upon the complete power with which otherwise the legislative department of the State was vested in its creation." He preceded that principle by stating: "The distinguishing characteristic difference between the Federal and State Constitutions is that the Constitution of the United States is but a grant of legislative power, and the Congress

can, in framing laws, only exercise such authority as is granted, whilst on the other hand, State Constitutions are only limitations upon the complete power with which otherwise the legislative department of the State was vested in its creation." He then quoted Judge Cooley in his work on Constitutional Limitations (4th ed., p. 210), wherein he said: "Congress can pass no laws but such as the Constitution authorizes, either expressly or by implication, while the State Legislature has jurisdiction of all subjects on which its legislation is not prohibited." And further quoting Judge Cooley, he said: "The law-making power of the State recognizes no restraints and is bound by none except such as are imposed by the Constitution. That instrument has been aptly termed a legislative Act by the people themselves in their sovereign capacity, and is, therefore, the paramount law. *Its object is not to grant legislative power but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute.*"

Our own Supreme Court has repeatedly held exactly the same doctrine. In Brown v. City of Galveston, 97 Texas, 1, it is held: "Except in the particulars where it is restrained by the Constitution of the United States, the legislative department may exercise all legislative power which is not forbidden expressly or by implication by the provisions of the Constitution of the State of Texas. Lytle v. Halff, 75 Texas, 128; Harris County v. Stewart, 91 Texas, 133; Cooley's Const. Lim., 200-201."

Every court in the land and every text-book writer on the subject is to precisely the same effect as this court and our Supreme Court. There can be no question about this cardinal rule being the law in this State.

Section 20, article 16, of our Constitution is not a delegation of power to the Legislature, but is an absolute command to the Legislature that it shall exercise a power it unquestionably had. The language is: "The Legislature *shall* at its first session, enact a law," not that it *may* do so. Again, in section 42, article 3, our Constitution says: "The Legislature *shall* pass such laws as may be necessary to carry into effect the provisions of this Constitution." In section 56, article 3, is a long enumeration of subjects, forbidding the Legislature to pass any local or special law upon them. The language is: "The Legislature *shall* not." Then there are other provisions unnecessary to specially mention where the Legislature is prohibited from doing some other specific things. It was by reason of these express prohibitions that it became necessary for the Constitution, for instance, in section 23, article 16, to provide in effect that said prohibitions did not prevent the Legislature from passing stock laws for particular portions, sections and counties of the State. That section is no delegation of power. It is simply excepting that subject from the said other general prohibition provisions. So of every other matter mentioned by Judge Morrow in his opinion wherein the Legislature has submitted and the people amended certain provisions of our Constitution. In each instance mentioned by him the amendment became necessary not because

the Legislature did not have power to enact such laws if it had not been expressly prohibited from doing so; it became necessary to amend to get the authority, because the power and authority had been expressly denied by the constitutional provisions which were amended. Not one of these matters, by implication or otherwise, tends to show that the Legislature, unless prohibited by the Constitution, did not have power to enact these laws. The amendments became necessary and proper because the constitutional provision amended expressly prohibited that, and the Legislature, of course, with that express prohibition were denied the power, and in order to exercise it they had to submit an amendment to the people and have them to adopt it so as to authorize the Legislature to legislate on the particular subjects mentioned.

Judge Morrow in his opinion herein cites, as authority, and quotes the opinion of two of our Supreme Court judges, on this question, in Ex parte Mitchell, 177 S. W. Rep., 953. Surely he has overlooked the decision of that court in the later case of Middleton v. Texas P. & C. Co., 185 S. W. Rep., 556, which is the very reverse of the Mitchell case, and utterly destroys the Mitchell case as any authority whatever. (State v. Clark, 187 S. W. Rep., 760.)

This case should be affirmed, not reversed. I dissent.