PD-0030-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/6/2015 5:50:35 PM
Accepted 2/11/2015 1:48:01 PM
ABEL ACOSTA
CLERK

NO. PD-0030-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

**Ex parte DAVID LEE VICTORICK,
Petitioner**

---

# AMENDED PETITION FOR DISCRETIONARY REVIEW

(Oral Argument Not Requested)

---

**On Discretionary Review from Docket Number 9-14-00112-CR
Ninth Court of Appeals, Beaumont**

---

Trial Court Cause Number 13-11-12323-CR
435TH Judicial District
Montgomery County, Texas

---

Submitted by:

L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net

Attorney for David Lee Victorick

FILED IN
COURT OF CRIMINAL APPEALS

February 11, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES

**Petitioner:**  David Lee Victorick

Counsel for Petitioner at Trial Court and on Appeal:
L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net

**Respondent:**  The State of Texas

Counsel for the State of Texas:
Honorable Brett Ligon, District Attorney
William Delmore, Ass't District Attorney
207 W. Phillips, 2nd Floor
Conroe, Texas  77301
(936) 539-7800
Fax: (936) 760-6940
bill.delmore@mctx.org

Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1400
const_claims@texasattorneygeneral.gov

State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046
information@spa.texas.gov


**Trial Court Judge:**
Honorable Michael T. Seiler

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS OR GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . 2

    QUESTION NO. ONE: Petitioner is never charged by complaint but he is placed on bond 77 days before he is indicted. The conditions of bond are oppressive and onerous, depriving Petitioner of, *inter alia*, First, Second, Fifth and Fourteenth Amendment rights. Does this constitute punishment for Fifth Amendment Double Jeopardy purposes?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    QUESTION NO. TWO: Can conditions of bond be so oppressive and onerous as to constitute punishment for Fifth Amendment Double Jeopardy purposes, especially when they are imposed before any criminal charge is brought? . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    ISSUE NO. ONE RESTATED: A Defendant is never charged by complaint or information but is placed on bond 77 days before he

is indicted.  The conditions of bond are oppressive and onerous, depriving the Defendant of First, Second, Fifth and Fourteenth Amendment rights.  This constitutes punishment for Fifth Amendment Double Jeopardy purposes. . . . . . . . . . . . . . . . . . .  6

ISSUE NO. TWO RESTATED: Conditions of bond can be so oppressive and onerous as to constitute punishment for Fifth Amendment Double Jeopardy purposes. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Punishment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Ancillary Conditions of Bond Were An Order.. . . . . . . . . . . . .  8
Constitution and Code of Criminal Procedure. . . . . . . . . . . . .  9

Statutory Guidelines To Setting Bail. . . . . . . . . . . . . . . . . . . . . . .  10

No Record To Support Conditions of Bond.. . . . . . . . . . . . . . . . . . . 12

Statutory Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The Conditions of Bond.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Deprivation of Constitutionally-Guaranteed Rights. . . . . . . . . . . . . 15

Due Process Analysis.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATION OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

iii

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Cummings v. Missouri*, 71 U.S. 277 (1866). . . . . . . . . . . . . . . . . . . . . . . . . . . . [8](#)

*Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [17](#)

*Estelle v. Williams*, 425 U.S. 501 (1976). . . . . . . . . . . . . . . . . . . . . . . . . [10](#)

*Long Grove Country Club Estates, Inc. v. Village of Long Grove*, 693 F.Supp. 640 (N.D. Ill. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [17](#)

*Loving v. Virginia*, 388 U.S. 1 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . [16](#)

*Maness v. Meyers*, 419 U.S. 449 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . [8](#)

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . [20](#)

*Nanez v. Ritger*, 304 F.Supp. 354 (E.D. Wis., 1969). . . . . . . . . . . . . . . . . . . . [17](#)

*Paul v. Davis*, 424 U.S. 693 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [18](#)

*Prince v. Massachusetts*, 321 U.S. 158 (1944). . . . . . . . . . . . . . . . . . . . . . . . [16](#)

*United States v. Jorn*, 400 U.S. 470 (1971). . . . . . . . . . . . . . . . . . . . . . . . . [7](#)

*United States v. Halper*, 490 U.S. 435 (1989) . . . . . . . . . . . . . . . . . . . . . . . . [7](#)

*Whalen v. United States*, 445 U.S. 684 (1980). . . . . . . . . . . . . . . . . . . . . . . . [7](#)

*Williams v. United States*, 541 F.Supp. 1187 (E.D. N.C. 1982). . . . . . . . . . . [17](#)

## STATE CASES

*Aldine I. S. Dist. v. Ogg*, 122 S.W.3d 257 (Tex. App. – Houston [1ST Dist.]

2003, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [12](#)

*Azeez v. State*, 248 S.W.3d 182 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . [12](#)

*Calvert v. Fort Worth Nat. Bank*, 356 S.W.2d 918 (Tex. 1962). . . . . . . . . . [12](#)

*Cloud v. State*, 150 Tex.Crim. 458, 461, 202 S.W.2d 846 (1947). . . . . . . . . [9](#)

*Dunn v. County of Dallas*, 794 S.W.2d 560 (Tex. App. – Dallas 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [8](#)

*Ex parte Elliott*, 950 S.W.2d 714, 716 (Tex. App. – Fort Worth 1997, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [11](#)

*Ex parte Harrell*, 542 S.W.2d 169 (Tex. Crim. App. 1976)... . . . . . . . . . . . . [12](#)

*Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . [3](#)

*Ex parte Mode*, 77 Tex. Crim. 432, 180 S.W. 708 (1915) . . . . . . . . . . . . . . . [12](#)

*Ex parte Vance*, 608 S.W.2d 681 (Tex. Crim. App. 1980). . . . . . . . . . . . . . [10](#)

*Ex parte Victorick*, Docket No. 09-14-00112-CR, ____ S.W.3d _____, 2014 WL 6984140 (Tex. App. —Beaumont December 10, 2014) (Designated for publication).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [1](#)

*FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.,* 255 S.W.3d 619 (Tex.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [13](#)

*FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.,* 255 S.W.3d 619 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [13](#)

*Halbert v. Alford*, 16 S.W. 814 (Tex. 1891)... . . . . . . . . . . . . . . . . . . . . . . . [8](#)

*Kniatt v. State*, 206 S.W .3d 657 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . [5](#)

*Ludwig v. State*, 812 S.W.2d 323 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . [11](#)

v

*Lyle v. State*, 80 Tex. Crim. 606, 193 S.W. 680 (1917). . . . . . . . . . . . . . . . . 12

*Nguyen v. State*, 881 S.W.2d 141 (Tex. App. – Houston [1ST Dist.]1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Robinson v. State*, 739 S.W.2d 795 (Tex.  Crim.  App.  1987).. . . . . . . . . . 3

*Turner v. State*, 733 S.W.2d 218 (Tex. Crim. App. 1987). . . . . . . . . . . . . . 9

**STATE STATUTES**

Article § 1.07, Texas Code of Criminal Procedure (1966). . . . . . . . . . . . . . . 9

Article 17.15, Code of Criminal Procedure (2005). . . . . . . . . . . . . . . 10, 12, 13

Article 17.40(a), Texas Code of Criminal Procedure (Vernon 2007). . . 11-13

Article 56.01(3), Texas Code of Criminal Procedure (Vernon 2006). . . . . . 14

Article 56.32(a)(11)(A)(I), Texas Code of Criminal Procedure (Vernon 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Texas Govt' Code § 311.016(2) (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Texas Penal Code § 2.01 (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Texas Penal Code, § 33.01(4) (2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Texas Penal Code, § 33.021(b) (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Texas Penal Code, § 33.021(c) (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

**U.S. CONSTITUTION**

Amend. I, U.S. Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16, 17, 20

Amend. II, U.S. Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 16, 20

Amend. V, U.S. Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7, 17, 18, 20

Amend. VIII, U.S. Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Amend. XIV, U.S. Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 17, 20

## TEXAS CONSTITUTION

Article 1, § 11, Texas Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Article 1, § 23, Texas Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

## OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Random House Dictionary, © Random House, Inc. 2014. . . . . . . . 13, 14, 16

Wittenberg, *Understanding Voice Over IP Technology*, 2-6 First Ed. 2009.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Hamilton, History of the Republic of the United States. . . . . . . . . . . . . . . .7

## Statement Regarding Oral Argument

Under Texas Rules of Appellate Procedure 68.4(c), Petitioner does not request oral argument before this Court. *See* Tex. Rule App. Proc. 68.4(c). Although this is a meritorious appeal of a criminal case, Petitioner believes that the facts and legal arguments are adequately presented in this Petition and in the record on appeal. Petitioner also believes that the decisional process of the Court will not be significantly aided by oral argument. As a result, Petitioner does not request oral argument and asks that the Questions presented in this Petition be considered by submission only. Should the Court desire oral argument, Petitioner will be happy to comply.

**To The Honorable Judges Of The Court of Criminal Appeals:**

Petitioner, David Lee Victorick, respectfully shows:

## STATEMENT OF THE CASE

This petition requests this Court to review the judgment and opinion of the Ninth Court of Appeals in *Ex parte Victorick*, Docket No. 09-14-00112-CR, ___ S.W.3d ____, 2014 WL 6984140 (Tex. App. —Beaumont December 10, 2014) (Designated for publication)(*See* Appendix 1).

On August 29, 2013, Petitioner was placed on bond, even though no complaint was filed and there was no indictment.

On November 14, 2013, the State charged Petitioner by indictment with a second-degree felony under Section 33.021(c), Texas Penal Code. The terms and conditions of the original bond were continued by a new written order.

Before trial, Petitioner filed a writ of habeas corpus alleging that the terms and conditions of bond were so oppressive as to constitute punishment and thus trigger his Fifth Amendment Double Jeopardy protections.

The writ was denied.

## PROCEDURAL HISTORY

The trial court set Ancillary Conditions of Bond on August 29, 2013.

Petitioner was indicted on November 14, 2013. (CR – 1ST Appeal, p. 13,

Appendix 2)

On November 19, 2013, the Ancillary Conditions of Bond were again imposed on Petitioner. (CR - 1ST Appeal, p. 48; Appendix 3). On December 6, 2013, the trial court ordered the District Clerk to place certified copies of all documents from Cause No. 13-08-09228-CR into Cause No. 13-11-12323-CR. (CR – 1ST Appeal, p. 86).

On March 7, 2014, Petitioner filed his Application for Writ of Habeas Corpus on Double Jeopardy grounds.

On March 7, 2014, the trial court denied the Writ. On March 7, 2014, Petitioner filed his Notice of Appeal.

On December 10, 2014, the Ninth Court of Appeals denied Petitioner relief and affirmed the trial court. On January 5, 2015, Petitioner filed his Motion for Extension of Time. On January 14, 2015, this Honorable Court granted his Extension of Time until February 9, 2015. This Petition is timely filed.

## QUESTIONS OR GROUNDS FOR REVIEW

Petitioner presents the following questions or grounds for discretionary review.

**QUESTION NO. ONE:** Petitioner is never charged by complaint but he is placed on bond 77 days before he is indicted. The conditions of bond are

oppressive and onerous, depriving Petitioner of, *inter alia*, First, Second, Fifth and Fourteenth Amendment rights. Does this constitute punishment for Fifth Amendment Double Jeopardy purposes?

**QUESTION NO. TWO:** Can conditions of bond be so oppressive and onerous as to constitute punishment for Fifth Amendment Double Jeopardy purposes, especially when they are imposed before any criminal charge is brought?

The relevant pages of the record are: CR – 1ST Appeal, pp. 5, 13, 47, 48, 85 and 86.

## STATEMENT OF FACTS

Petitioner disagrees with the characterization of the facts set forth by the Court of Appeals and submits that the following represents the facts as they actually occurred.

On August 29, 2013, Petitioner was "indicted" for violating § 33.021(b), Texas Penal Code.[1] On that same day, the trial court set Bond in the amount of $250,000 [2] and it set Ancillary Conditions of Bond.[3] (Appendix 2) The Ancillary Conditions of a Bond were an order, requiring Petitioner to comply with the ancillary conditions.

---

[1]  Indictment, 1ST CR p. 5 This Court declared this statute unconstitutional. *See*, *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). As a result, the indictment was void from the inception. *See*, *Robinson v. State*, 739 S.W.2d 795, 797 (Tex. Crim. App. 1987).

[2]  Order Setting Bond, 1ST CR p. 7

[3]  Ancillary Conditions of Bond, 1ST CR p. 12.

3

On September 3, 2013, Petitioner posted a surety bond in the amount of $250,000 in Cause No. 13-08-09228-CR.[4]

On October 30, 2013, this Honorable Court declared § 33.021(b), Penal Code unconstitutional.[5]

On November 14, 2013, Petitioner was indicted for violating § 33.021(c), Texas Penal Code.[6] Petitioner was not taken into custody on this charge. Petitioner never posted a new bond.

On November 19, 2013, the trial court imposed identical conditions of bond under the new indictment.[7] (Appendix 3)

On December 6, 2013, the State moved to "dismiss" the indictment in Cause No. 13-08-09228-CR, as the indictment "charged" a violation of § 33.021(b), Texas Penal Code.[8]

On December 6, 2013, the trial court ordered the District Clerk to place certified copies of all documents that are contained in the Court's file in Cause

---

4    Bond, 1ST CR p. 15 ▲

5    **Ex parte Lo**, 424 S.W.3d 10 (Tex. Crim. App. 2013). ▲

6    Indictment in Cause No. 13-11-12323-CR, 1ST CR p. 47 ▲

7    Ancillary Conditions of Bond in Cause No. 13-11-12323-CR, 1ST CR p. 48 ▲

8    Motion to Dismiss and Order in Cause No. 13-08-09228-CR, 1ST CR p. 85. As the statute was unconstitutional, the indictment was void. See Fn. 1, above. ▲

No. 13-08-09229-CR into the court's file in Cause No. 13-11-12323-CR.[9]

On March 7, 2014, Petitioner filed his Special Plea of Double Jeopardy[10] and his Writ of Habeas Corpus.[11]

On March 7, 2014, the trial court heard and denied the Writ of Habeas Corpus.[12]

On March 7, 2014, Petitioner filed his Notice of Appeal.[13] On December 10, 2014, the Ninth Court of Appeals affirmed the trial court's ruling. (Appendix 1)

## STANDARD OF REVIEW

This Court reviews a trial court's ruling on a pretrial writ of habeas corpus for an abuse of discretion.[14] In conducting this review, the Court views the facts in the light most favorable to the trial court's ruling.[15]

## ARGUMENT AND AUTHORITY

---

9   Order to District Clerk, 1ST CR p. 86. ⏏

10  Special Plea of Double Jeopardy, 2ND CR p. 30. ⏏

11  Writ of Habeas Corpus, 2ND CR p. 19. ⏏

12  Order on Application for Writ of Habeas Corpus, 2ND CR p. 29. ⏏

13  Notice of Appeal, 2ND CR p. 42. ⏏

14  *Kniatt v. State*, 206 S.W .3d 657, 664 (Tex. Crim. App. 2006). ⏏

15  *Kniatt*, 206 S.W.3d at 664. ⏏

**ISSUE NO. ONE RESTATED:** A Defendant is never charged by complaint or information but is placed on bond 77 days before he is indicted. The conditions of bond are oppressive and onerous, depriving the Defendant of First, Second, Fifth and Fourteenth Amendment rights. This constitutes punishment for Fifth Amendment Double Jeopardy purposes.

**ISSUE NO. TWO RESTATED:** Conditions of bond can be so oppressive and onerous as to constitute punishment for Fifth Amendment Double Jeopardy purposes.

These two Issues are addressed together because they are interrelated and rely upon the same argument and authorities. This is a case of first impression. And this case presents an important legal question that has never been answered but should be: when a certified copy of an order from a prior case between the same parties is ordered placed into the court's file in the current case, does that order become an order in the new case?

### FIFTH AMENDMENT DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment prohibits trying a person and punishing a person twice for the same offense.[16] The Fifth Amendment's guarantee against double jeopardy protects not only against a second trial for the same offense but also against multiple punishments for the

---

[16] Amend. V, U.S. Constitution – "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb…"

same offense.[17]  This case falls within the protection against multiple punishments prohibition.

And, in a different context, the Supreme Court has held that Double Jeopardy may attach if the circumstances are attributable to judicial overreaching.[18]  Petitioner argues that the circumstances under which the Ancillary Conditions of Bond were first imposed upon him, coupled with their draconian effect, constitute such judicial overreaching as to trigger his Double Jeopardy protections.

**PUNISHMENT**

The Constitution does not define punishment. One must, therefore, look to caselaw and other authorities to see how punishment has been defined.

Mr. John C. Hamilton, in his 'History of the Republic of the United States,' said that deprivation or suspension of any civil rights for past conduct is punishment for such conduct.[19]

And, early on, the Supreme Court opined that:

> "The deprivation of *any* rights, civil or political, previously enjoyed, may be punishment, the circumstances attending and the

---

[17]     ***Whalen v. United States***, 445 U.S. 684 (1980); ***United States v. Halper***, 490 U.S. 435, 440 (1989). ▲

[18]     ***United States v. Jorn***, 400 U.S. 470, 483-484 (1971)(plurality opinion). ▲

[19]     Vol. 3, p. 24. ▲

7

causes of the deprivation determining this fact. …. Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined."[20]

Because he was deprived of constitutional rights before he was charged, Petitioner was punished by the ancillary conditions of bond.

### ANCILLARY CONDITIONS OF BOND WERE AN ORDER:

Because the Ancillary Conditions of Bond stated that the "Defendant Shall", they were an order directed to Petitioner.[21] He had to obey that order lest his bond be forfeited and he be incarcerated pending trial.[22]

A court acts by and through its orders and not otherwise.[23] An order is a command, direction, or decision on a collateral or intermediate point in a case, indeterminative of the main issue.[24] The Ancillary Conditions of Bond were, therefore, orders.

Petitioner acknowledges that the trial court could have taken judicial notice of the Ancillary Conditions of Bond that it entered in Cause No. 13-08-

---

[20]     ***Cummings v. Missouri***, 71 U.S. 277, 321 – 322 (1866) [Emphasis supplied]. ▲

[21]     *Id.*, "Defendant shall:…"  Shall is mandatory. § 311.016(2), Texas Govt' Code. ▲

[22]     ***Maness v. Meyers***, 419 U.S. 449, 458 (1975) (All orders must be complied with promptly.) ▲

[23]     ***Dunn v. County of Dallas***, 794 S.W.2d 560, 562 (Tex. App. – Dallas 1990). ▲

[24]     ***Halbert v. Alford***, 16 S.W. 814 (Tex. 1891). ▲

8

09228-CR.[25] But it did not do so. Instead it ordered the District Clerk to place certified copies of all documents from that case into the court's file in Cause No. 13-11-12323-CR.

In doing so, the trial court made the Ancillary Conditions of Bond that it entered in Cause No. 13-08-09228-CR, an order in Cause No. 13-11-12323-CR.[26] And because of this, Petitioner had to and was required to comply with the conditions of bond 77 days before he was indicted in  Cause No. 13-11-12323-CR.

**CONSTITUTION AND CODE OF CRIMINAL PROCEDURE:**

The right to a reasonable bond is based on the presumption of innocence and is protected by the United States and Texas Constitutions and the Texas Code of Criminal Procedure.[27] "The presumption of innocence that surrounds every accused person means an assumption which prevails as the judgment of the law until the contrary is proven."[28]  And "[T]he presumption of innocence, although not articulated in the Constitution, is a basic component

---

[25]    ***Turner v. State***, 733 S.W.2d 218 (Tex. Crim. App. 1987). ▲

[26]    Rule 34.5(a), T.R.A.P. ▲

[27]    U.S. Const.  Amend. VIII; Tex. Const. art. 1, § 11; Texas Code Crim. P. Art. § 1.07. *See also*, ***Nguyen v. State***, 881 S.W.2d 141, 142 (Tex. App. – Houston [1ST Dist.]1994). ▲

[28]    ***Cloud v. State***, 150 Tex.Crim. 458, 461, 202 S.W.2d 846, 848 (1947) (op. on reh'g). ▲

9

of a fair trial under our system of criminal justice."[29]  Indeed, the Code of Criminal Procedure mandates that "[A]ll persons are presumed innocent and no person may be convicted of an offense unless each element is proved beyond a reasonable doubt."[30]

It is against that context that this Court should recall that the primary purpose of an appearance bond is to secure the defendant's presence in court.[31]

**STATUTORY GUIDELINES TO SETTING BAIL:**

Article 17.15, Code of Criminal Procedure, sets out the statutory factors that a court may consider in setting bail.  The factors set out in the Code of Criminal Procedure allows the trial court to consider the future safety of an alleged victim of the alleged offense and the community when it sets the amount of bail.[32]

Interestingly, bail was set at $250,000 even though Petitioner has deep roots in the community, owns a home with his wife, has no prior criminal

---

[29]     *Estelle v. Williams*, 425 U.S. 501, 503 (1976). ⬆

[30]     Texas Penal Code § 2.01 (Vernon 2003). ⬆

[31]     *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. [Panel Op.] 1980). ⬆

[32]     To the extent that this section of the Code of Criminal Procedure refers to a victim, Petitioner argues that it is unconstitutional as depriving him of the presumption of innocence, as there can be no victim until it is proven that a crime has, in fact, been committed. ⬆

record, and was not charged with a crime of violence. Compare that amount

of bail to what this Court reduced bail to in a case where the defendant was

charged by two indictments with murder and one indictment for capital

murder.[33] There, this Court reduced bail to $50,000. This Court did so even

though it noted:

> "It appears that both the habeas court and the court of appeals
> were influenced by testimony that appellant had threatened his
> victims, a brother-in-law and nephew by marriage, before he
> allegedly killed them. He had also threatened the life of his
> mother-in-law, who testified she felt she was a victim of
> appellant's crimes, and would be endangered if appellant were to
> be released on bond. Appellant's wife echoed this concern."[34]

Article 17.40(a), Texas Code of Criminal Procedure (Vernon 2012),

provides that:

> To secure a defendant's attendance at trial, a magistrate may
> impose any reasonable condition of bond related to the safety of
> a victim of the alleged offense or to the safety of the community.[35]

Conditions of bond are to be tailored to insure an individual defendant will

appear for court hearings.[36]

---

[33]     *See*, ***Ludwig v. State***, 812 S.W.2d 323 (Tex. Crim. App. 1991). ▲

[34]     ***Ludwig***, 812 S.W.2d at 324. ▲

[35]     To the extent that this section of the Code of Criminal Procedure refers to a victim, Petitioner argues that it is unconstitutional as depriving him of the presumption of innocence, as there can be no victim until it is proven that a crime has, in fact, been committed. ▲

[36]     ***Ex parte Elliott***, 950 S.W.2d 714, 716 (Tex. App. – Fort Worth 1997, pet. ref'd). ▲

11

Article 17.15 and Article 17.40(a), Texas Code of Criminal Procedure, are statutes that involve the same general subject matter and also possess the same general purpose (securing the defendant's appearance at trial, the safety of the "victim" and the community). They are, therefore, "in pari materia."[37]

In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts dealing with the same subject and having the same purpose will, therefore, be taken[38] and read together,[39] each enactment in reference to the other,[40] as though they were parts of one and the same law.[41] Stated another way, statutes bearing on the same subject matter should be construed together, and both given effect, if possible.[42]

**NO RECORD TO SUPPORT CONDITIONS OF BOND:**

Petitioner points out that there is no record for this Court to review to

---

[37]     *Azeez v. State*, 248 S.W.3d 182, 191 (Tex. Crim. App. 2008).

[38]     *Calvert v. Fort Worth Nat. Bank*, 356 S.W.2d 918, 921 (Tex. 1962).

[39]     *Ex parte Harrell*, 542 S.W.2d 169, 171 (Tex. Crim. App. 1976).

[40]     *Ex parte Harrell*, 542 S.W.2d at 171.

[41]     *Ex parte Mode*, 77 Tex. Crim. 432, 180 S.W. 708 (1915) (overruled in part on other grounds by, *Lyle v. State*, 80 Tex. Crim. 606, 193 S.W. 680 (1917)).

[42]     *Aldine I. S. Dist. v. Ogg*, 122 S.W.3d 257, 270 (Tex. App. – Houston [1ST Dist.] 2003, no pet.).

determine how the trial court allegedly considered the statutory factors in setting the Ancillary Conditions of Bond. Further, there is no hearing of any sort shown to have occurred before the Conditions were set, under either docket number.[43]

**STATUTORY CONSTRUCTION:**

Article 17.15(2), Texas Code of Criminal Procedure forbids a court from using the power to require bail so as to make it an instrument of oppression. Since Article 17.15 is in pari materia with Article 17.40, Article 17.40(a) must be read as forbidding a court from setting conditions of bond so as to make them an instrument of oppression.

Oppression is not defined in the Code of Criminal Procedure. Since the Legislature did not define the word, oppression, it has its ordinary meaning.[44]

Oppression is defined as the exercise of authority or power in a burdensome, cruel, or unjust manner, or as an act or instance of oppressing.[45] Oppress is defined as to burden with cruel or unjust impositions or restraints;

---

[43]     Entire CR. ⏏

[44]     *See* **FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.,** 255 S.W.3d 619, 633 (Tex.2008) ("We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.") ⏏

[45]     Random House Dictionary, © Random House, Inc. 2014 ⏏

subject to a burdensome or harsh exercise of authority or power.[46]

The Ancillary Conditions of Bond were beyond oppressive, they deprived Petitioner of Constitutionally-guaranteed rights.

**THE CONDITIONS OF BOND:**

The Ancillary Conditions of Bond were entered by the trial court without holding a hearing or receiving any evidence on the record.[47] Based upon some unknown information, the trial court determined that a crime had been committed, that there was a victim and that the safety of the community had to be protected. Specific reference is made to ¶¶ 15 and 17, thereof and the word, "victim," within each paragraph. This is important because the word – "victim" – is defined in the Code of Criminal Procedure as:

> "... a person who is the victim of the offense of sexual assault, kidnapping, aggravated robbery, trafficking of persons, or injury to a child, elderly individual, or disabled individual or **who has suffered personal injury or death as a result of the criminal conduct of another.**"[48]

Or as:

> "(A) an individual who:
> (I) suffers personal injury or death as a result of **criminally**

---

[46]     Random House Dictionary, © Random House, Inc. 2014 ▲

[47]     See Ancillary Conditions of Bond, 1ST CR p. 12 and p. 48 and entire CR as to lack of any hearing on Conditions of Bond. ▲

[48]     Tex. Crim. Pro. Art. 56.01(3) (Vernon 2006). [Emphasis supplied] ▲

14

**injurious conduct** ..."[49]

By using the term, "victim", the trial court determined that Petitioner had committed a crime. Petitioner argues that this was actually an adjudication of his guilt, which also forbade his subsequent trial.

**DEPRIVATION OF CONSTITUTIONALLY-GUARANTEED RIGHTS:**

The Ancillary Conditions of Bond[50]  prohibited Petitioner from:

a)  Possessing any firearms;

b)  Having any association, contact and communication, directly or indirectly with the alleged victim's family or household;[51]

c)  Not go to or within 100 yards of the residence of the alleged victim or the alleged victim's family or household;

d)  Having any contact with any child under the age of 17 years of age; and

e)  Having no contact with any computer[52] or internet connection.

---

[49]  Tex. Crim. Pro. Art. 56.32(a)(11)(A)(I) (Vernon 2006). [Emphasis supplied] ▲

[50]  See Ancillary Conditions of Bond, 1ST CR p. 12 and p. 48. ▲

[51]  The Ancillary Conditions of Bond refers to the victim. Mr. Victorick denies that a crime was committed and therefore substitutes the term, alleged victim. ▲

[52]  § 33.01(4), Texas Penal Code defines computer as "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device that performs logical, arithmetic, or memory functions by the manipulations of electronic or magnetic impulses and includes all input, output, processing, storage, or communication facilities that are connected or related to the device." ▲

15

Contact was not defined in the Ancillary Conditions of Bond, so the word has its ordinary meaning – the act or state of touching; a touching or meeting, as of two things or people; immediate proximity or association.[53]

The Ancillary Conditions of Bond[54] also required Petitioner to:

a)    Work faithfully at suitable employment as far as possible; and

b)    Support his dependents.

In the context of both cases, it is undisputed that the alleged victim is his step-daughter.

Prior to this case, Petitioner had never been convicted of any crime. As such, he has a Second Amendment and Article 1, § 23, Texas Constitution, right to possess firearms. But the Ancillary Conditions of Bond removed that constitutional right from him. This was even though the crime alleged was not a crime of violence or one in which a firearm was used. As such, Petitioner has been punished by depriving him of his Second Amendment right.

Petitioner has a First Amendment right to associate with his wife.[55] Petitioner was deprived of his First Amendment right to associate with his

---

[53]    Random House Dictionary, © Random House, Inc. 2014. ⏏

[54]    See Ancillary Conditions of Bond, 1ST CR p. 12 and p. 48. ⏏

[55]    *Loving v. Virginia*, 388 U.S. 1, 12 (1967)(Among the decisions that an individual may make without unjustified government interference are personal decisions "relating to marriage"); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)(family relationships). ⏏

wife through the Ancillary Conditions of Bond. As such, Petitioner was punished.

A citizen has a First Amendment right to religion, which includes the right to attend church.[56] A citizen also has a First Amendment protected right to move about freely and peaceably in public places.[57]

The Ancillary Conditions of Bond prohibited Petitioner from having any contact with any child under 17 years of age. Because persons under the age of 17 years can reasonably be expected to be encountered there, this Condition of Bond prohibited Petitioner from attending church, from going to the super market, to the movies or even to the store, in fact from going anywhere in public. These are First Amendment rights that Petitioner was denied and deprived of. As such, Petitioner was punished through the denial of these First Amendment rights.

Petitioner has a Fifth and Fourteenth Amendment liberty interest in being able to work.[58] The loss of one's job amounts to a deprivation of liberty

---

[56] *See, e.g.*, **Employment Div., Dept. of Human Resources of Oregon v. Smith**, 494 U.S. 872 (1990). ▲

[57] **Nanez v. Ritger**, 304 F.Supp. 354 (E.D. Wis., 1969). ▲

[58] **Long Grove Country Club Estates, Inc. v. Village of Long Grove**, 693 F.Supp. 640, 662 (N.D. Ill. 1988) ("Liberty includes the right "to work for a living in the common occupations of the community." "); **Williams v. United States**, 541 F.Supp. 1187 (E.D. N.C. 1982) (citizens do possess the right to work for a living in the common occupations of the community. U.S. Const.

17

when that person does not remain free to locate alternate employment.[59] The Ancillary Conditions of Bond prevented Petitioner from having any contact with a computer or internet connection. Other than menial physical jobs, most jobs require that applicants, such as Petitioner, submit their application online. Because of the prohibition against contact with a computer, Petitioner could not even apply for a job without violating the Ancillary Conditions of Bond.

Most jobs today require that employees access either a computer, or a Point Of Sale (POS) terminal (a computer), which would violate the Ancillary Conditions of Bond. Even swiping a credit card accesses the internet and violates the Ancillary Conditions of Bond. These Conditions of Bond prohibited Petitioner from seeking, much less continuing any employment. Petitioner was, therefore, been denied a constitutionally-protected liberty interest and was punished.

This is over and above the fact that there is no job where one can be assured that he will not have any contact with a person under the age of 17 years, however inadvertent or fleeting. But any such contact would be a

---

Amend. 5). ▲

       [59]     *See, e.g.*, **Paul v. Davis**, 424 U.S. 693 (1976) *reh. denied* 425 U.S. 985 (1976). ▲

violation of the terms and conditions of Bond and subject Petitioner to forfeiture of his Bond and incarceration pending trial. The only way to avoid this was for Petitioner to remain in the home where he was staying. Again, Petitioner was punished.

As to having no contact with any computer,[60] this condition prohibited Petitioner from being able to use any cell phone as all have the ability to store numbers in their memory and thus qualify as computers.[61] It also effectively denied Petitioner the right to seek employment because virtually all phones have a built-in memory for last number called, etc. and thus qualify as a computer.

And as to having no access to the internet, in light of VoIP,[62] Petitioner could not even chance making a telephone call from a land line, lest he inadvertently violate the Conditions of Bond by having his call go over the Internet via VoIP.

---

[60]    § 33.01(4), Texas Penal Code defines computer as "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device that performs logical, arithmetic, or memory functions by the manipulations of electronic or magnetic impulses and includes all input, output, processing, storage, or communication facilities that are connected or related to the device." ▲

[61]    This is before one anaylyzes their ability to perform logical and mathematical functions. ▲

[62]    VoIP – Voice over Internet Protocol. *See* Wittenberg, *Understanding Voice Over IP Technology*, 2-6 First Ed. 2009. Common examples of this service are Comcast®, MagicJack®, Vonage® and RingCentral®. ▲

In short, these terms and conditions are so onerous and oppressive that Petitioner was punished for the acts alleged in the indictment – long before any trial was had and long before he was charged in any manner.

**DUE PROCESS ANALYSIS:**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."[63] The "right to be heard before being condemned to suffer grievous loss of *any kind*, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."[64]

Here, Petitioner was not afforded the right to be heard on any of the Ancillary Conditions of Bond before they were twice imposed upon him by judicial fiat.[65] This, even though those Conditions deprived Petitioner of First, Second, Fifth and Fourteenth Amendment rights.

## CONCLUSION AND PRAYER

Seventy-seven days before he was charged in any manner, Petitioner

---

[63]     *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ▲

[64]     *Mathews v. Eldridge*, 424 U.S. at 333 [emphasis supplied]. ▲

[65]     Fiat – An order or decree, esp. an arbitrary one <judicial fiat>. Black's Law Dictionary (9th ed. 2009) ▲

was deprived of First, Second, Fifth and Fourteenth Amendment rights without a hearing and without the State showing that any of the conditions imposed were necessary for the safety of the alleged victim or for the safety of the community. Having been imposed by judicial fiat and having effectively relegated Petitioner to living incommunicado and isolated from the world, these Conditions of Bond should be held to constitute punishment for the purpose of Double Jeopardy. Further, the judicial overreaching that is shown to have occurred should also be held to trigger Petitioner's Double Jeopardy rights. Upon that finding, this Court should vacate any subsequent punishment of Petitioner. Petitioner prays for general relief.

Respectfully submitted,

By: /s/ L.T. Bradt
L.T. "Butch" Bradt #02841600
14015 Southwest Freeway, Suite 4
Sugar Land, Texas 77478-3500
(281) 201-0700
Fax: (281) 201-1202
ltbradt@flash.net
Attorney for Petitioner,
David Lee Victorick

## CERTIFICATE OF SERVICE

I, the undersigned attorney, in accordance with the Rule 9.5, T.R.A.P., certify that a true and correct copy of the foregoing Petition was delivered to:

Honorable Brett Ligon, District Attorney

21

William Delmore, Ass't District Attorney
207 W. Phillips, 2nd Floor
Conroe, Texas 77301
bill.delmore@mctx.org

Postconviction Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
const_claims@texasattorneygeneral.gov

State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711-3046
information@spa.texas.gov

     on February 6, 2015.

/s/ L.T. Bradt      
L.T. Bradt

## CERTIFICATION OF COMPLIANCE

This is to certify that, using the word count feature of WordPerfect X7, the total number of words in the Petition is 4121, *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of questions presented, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface in 14-point Georgia and the footnotes are in a proportionally-spaced typeface in 12-point Times New Roman.

/s/ L.T. Bradt      
L.T. Bradt

# APPENDIX

# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00112-CR
### NO. 09-14-00190-CR

_____

### EX PARTE DAVID LEE VICTORICK

### and

### DAVID LEE VICTORICK, Appellant

### V.

### THE STATE OF TEXAS, Appellee

_____

### On Appeal from the 435th District Court
### Montgomery County, Texas
### Trial Cause No. 13-11-12323 CR

_____

### OPINION

This matter involves two appeals filed by David Lee Victorick relating to his

indictment and subsequent conviction for online solicitation of a minor.[1] *See* Tex.

---

[1]We have considered three related matters filed by Victorick. Initially, we dismissed a petition for a writ of mandamus wherein Victorick sought to compel the presiding administrative judge to grant Victorick's motion to recuse the trial

Penal Code Ann. § 33.021(c) (West 2011). On March 7, 2014, the trial court denied Victorick's pre-trial application for writ of habeas corpus asserting a claim of double jeopardy. Victorick filed a notice of appeal and requested that his trial be stayed pending the resolution of Appeal No. 09-14-00112-CR, but this Court denied the motion to stay. Victorick was tried, convicted, and sentenced to five years of imprisonment. Victorick filed a notice of appeal of the final judgment, docketed in Appeal No. 09-14-00190-CR. We affirm the order denying the application for a writ of habeas corpus and the judgment of conviction.

## ISSUES

Victorick presents two issues in Appeal No. 09-14-00112-CR (the pre-trial request for habeas relief). First, he contends a bond order that issued after his arrest

---

judge. *See In re Victorick*, No. 09-13-00483-CR, 2013 WL 5969469, at *1 (Tex. App.—Beaumont Nov. 6, 2013, orig. proceeding) (mem. op., not designated for publication). Next, we denied a petition for a writ of mandamus and prohibition filed by Victorick to compel the trial court to stay the trial pending the resolution of his appeal of the trial court's denial of a pre-trial habeas application challenging the facial constitutionality of the statute creating the offense for which he was indicted. *See In re Victorick*, No. 09-13-00550-CR, 2013 WL 6885130, at *1 (Tex. App.—Beaumont Dec. 30, 2013, orig. proceeding, [leave denied]) (mem. op., not designated for publication). Finally, we affirmed the trial court's denial of Victorick's facial challenge to the constitutionality of Texas Penal Code section 33.021(c). *See Ex parte Victorick*, No. 09-13-00551-CR, 2014 WL 2152129, at *1 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication). In the habeas appeal now before us, we granted Victorick's motion to take judicial notice of the clerk's record filed in Appeal No. 09-13-00551-CR. *See Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987).

2

on a previous indictment, which did not go to trial, constitutes punishment under the Fifth Amendment's Double Jeopardy Clause because the bond contained oppressive and onerous conditions that infringed upon his constitutional rights. Second, Victorick contends the oppressive and onerous conditions of his pre-trial bond on the indictment under which he was tried constitute punishment for double jeopardy purposes. In a motion to dismiss and with a suggestion of mootness, the State argues that Victorick's conviction mooted the appeal of the denial of pre-trial habeas relief.

Victorick presents three issues in Appeal No. 09-14-00190-CR (appeal of his conviction). First, he challenges the legal sufficiency of the evidence to support his conviction. Second, he contends he was deprived of an impartial magistrate. Third, Victorick contends the procedural rules that apply to recusal proceedings deprived him of due process because the rules do not provide for an interlocutory appeal.

INDICTMENT AND CONVICTION

The State initially indicted Victorick for online solicitation of a minor under subsection (b)(1) of section 33.021 of the Penal Code. *See* Tex. Penal Code Ann. § 33.021. After subsection (b)(1) was found to be unconstitutional by the Texas Court of Criminal Appeals in *Ex parte Lo*, Victorick was re-indicted under subsection (c) of section 33.021 for knowingly soliciting a fifteen year old girl to meet him with the intent that she engage in sexual contact, sexual intercourse, or

3

deviate sexual intercourse with him. *See* 424 S.W.3d 10, 27 (Tex. Crim. App. 2013). Victorick entered a not guilty plea and a jury found the appellant guilty as charged, and assessed his punishment at imprisonment for five years.

MOOTNESS

Before we address Victorick's appellate issues we consider the State's argument that Victorick's appeal of the denial of the pre-trial request for habeas relief is moot. As a general rule, a habeas appeal relating to pre-trial bail is mooted by the subsequent conviction of the defendant because upon his conviction the habeas applicant is no longer being subjected to pre-trial confinement. *See e.g., Martinez v. State*, 826 S.W.2d 620, 620 (Tex. Crim. App. 1992). Unlike a habeas claim concerning pre-trial bail in which the applicant seeks relief from an unconstitutional pre-trial confinement, if he is correct regarding his double jeopardy argument, Victorick may be entitled to relief from the sentence imposed in the judgment of conviction that has also been appealed to this Court. Therefore, Victorick's pre-trial request for habeas relief is not necessarily mooted by his conviction.

DOUBLE JEOPARDY CLAIM

The indictment accusing Victorick of online solicitation of a minor under section 33.021(c) of the Texas Penal Code alleged, in part, that Victorick, on or about June 2, 2013, did "knowingly solicit by text message, K.E., a minor, to meet

4

the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant[.]" After indictment, Victorick filed an application for writ of habeas corpus in which he alleged that he was being illegally confined because "[t]he Court has set conditions of bond that are not only oppressive, they have denied him constitutionally-guaranteed rights." Victorick alleged that "Double Jeopardy forbids his trial on the present indictment." Victorick's petition for habeas relief contends that subjecting him to a trial and potential conviction and sentence for a second degree felony would violate the Double Jeopardy Clause's prohibitions against multiple punishments because he had already been subjected to punishment within the scope of the Double Jeopardy Clause by conditions of his bond that prohibited him from: (1) possessing any firearms; (2) contacting the alleged victim's family; (3) going within 100 yards of the residence of the alleged victim; (4) contacting any child under seventeen years of age; or (5) having any contact with any computer or internet connection. Victorick argues that the conditions of his bond effectively denied him his right to bear arms, to associate with his wife, to attend church, to move about freely and peaceably in public places, and to work. No evidence was offered in the pre-trial habeas hearing. The trial court denied the application.

The Fifth Amendment states that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. CONST.

amend. V. Victorick argues that placing him on bond under conditions that he contends are oppressive and onerous constitutes punishment for Fifth Amendment double jeopardy purposes. Citing *United States v. Jorn*, Victorick contends that judicial overreaching triggers double jeopardy protections. *See* 400 U.S. 470, 483-84 (1971) (plurality op.). *Jorn* held the Double Jeopardy Clause barred a re-trial after the trial court *sua sponte* discharged the jury without manifest necessity for calling a mistrial and without considering granting a continuance. *Id.* at 487. *Jorn* was a successive prosecution case in which jeopardy attached with the seating of the jury in the first trial and terminated when the trial court discharged the jury; jeopardy would attach a second time with the seating of a new jury, thereby implicating the Fifth Amendment's protection against successive prosecution. *See id.* at 484.

Victorick argues the trial court erred in failing to apply the *Jorn* successive prosecution concept, notwithstanding the fact that jeopardy attached only once in his case. Victorick contends without citing any authority that by referring to the complaining witness as the "victim" in the order setting conditions of bond, the trial court determined that he had committed a crime and the entry of the order functioned as an adjudication of guilt. The law of this state is well settled that with respect to a jury trial, jeopardy attaches when the jury is empaneled and sworn, and for a bench trial jeopardy attaches when the defendant pleads to the charging

6

instrument. *See Ortiz v. State*, 933 S.W.2d 102, 105 (Tex. Crim. App. 1996) (The constitutional prohibition against double jeopardy does not apply until the defendant enters a plea before the trier of facts.). Jeopardy does not attach in a preliminary hearing regardless of what facts may be determined during the proceeding. *See id.*

Nevertheless, when the defendant has been subjected to a single trial, "the Double Jeopardy Clause 'prevent[s] the sentencing court from prescribing greater punishment than the legislature intended.'" *Ervin v. State*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). Factors considered in determining legislative intent include whether two provisions imposing separate punishments are contained within the same statutory section, whether they are phrased in the alternative, whether they are named similarly, whether they have common punishment ranges, whether they have a common focus or gravamen, and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between them can be considered the same under an imputed theory of liability which would result in the offenses being considered the same under the *Blockburger* test, and whether there is legislative history articulating an interest to treat the offenses as the same or different for double jeopardy purposes. *Ervin*, 991 S.W.2d at 814 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

7

The State cites cases from other jurisdictions, which hold that conditional pre-trial release cannot be considered punishment for purposes of the Double Jeopardy Clause because it serves a remedial rather than a punitive purpose and a bond condition is not based on a determination of guilt. *See State v. Torres*, 890 So.2d 292, 296 (Fla. Dist. Ct. App. 2d Dist. 2004) (conditions of pre-trial release requiring accused to attend sex offender treatment were not punitive and double jeopardy did not attach); *accord Parent v. State,* 900 So.2d 598, 599-600 (Fla. Dist. Ct. App. 2d Dist. 2004) (special conditions placed on pre-trial release of DUI defendant did not bar further prosecution under the double jeopardy clause); *Halikipoulos v. Dillion*, 139 F.Supp.2d 312 (E.D.N.Y. 2001) (pre-trial release condition requiring defendant to attend "stoplift" counseling program did not constitute punishment and court rejected double jeopardy argument). While not binding on this Court, the cases are instructive of the result reached in other jurisdictions.

In Texas, the Code of Criminal Procedure provides rules for fixing the amount of the bond and the conditions of bond. Tex. Code Crim. Proc. Ann. arts. 17.15 (West 2005), 17.40 (West Supp. 2014). "The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with." Tex. Code Crim. Proc. Ann. art. 17.15. In setting the amount of the bond, "[t]he power to require bail is not to be used as to make it an instrument of oppression." *Id.* The

8

magistrate considers "[t]he nature of the offense and the circumstances under which it was committed" and also considers "[t]he future safety of a victim of the alleged offense and the community. . . ." *Id.* In Texas, "a magistrate may impose any reasonable condition of bond related to the safety of a victim of the alleged offense or to the safety of the community." Tex. Code Crim. Proc. Ann. art. 17.40. Unlike the criminal offense of online solicitation of a minor that is contained within the Penal Code, the statutes that authorize a trial court to fix bail pending trial and to impose conditions on a defendant's pre-trial release on bail function to ensure the defendant's appearance at trial and to protect the community without requiring a finding of guilt. *Compare* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40, *with* Tex. Penal Code Ann. § 33.021(c). We conclude that the clear intent of the Legislature as demonstrated in the plain language contained in articles 17.15 and 17.40 was to permit a trial court to set reasonable conditions of bond as a requirement for pre-trial release and then to impose the penalty set out in the Penal Code for the offense if the defendant is later tried and convicted. *See Ervin*, 991 S.W.2d at 814.

Victorick argues that in his case, the trial court failed to follow the rules established by articles 17.15 and 17.40 of the Texas Code of Criminal Procedure and that the trial court imposed unreasonable conditions of bond. *See* Tex. Code Crim. Proc. Ann. arts. 17.15, 17.40. He argues that the conditions impacted his

freedoms as guaranteed by the Fifth Amendment to such a degree that he has been punished before trial for the acts alleged in the indictment. The proper method to challenge a punitive bail condition is by filing either a motion to reduce bail or an application for a writ of habeas corpus for a bail reduction. *See Stack v. Boyle*, 342 U.S. 1, 6 (1951) (the proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail); *Ex parte Young*, 257 S.W.3d 276, 278 (Tex. App.—Beaumont 2008, no pet.) (the accused may challenge the conditions attached to bail through a pre-trial writ of habeas corpus).

Victorick petitioned for pre-trial habeas relief, but he sought only relief from the indictment and did not seek habeas relief from the order setting ancillary conditions of bond. Furthermore, he submitted no evidence regarding the oppressive nature of the conditions of bond. During the hearing on his pre-trial habeas petition, the State argued that the bond conditions were reasonable because they related to safety of the victim and the community. Considering that the indictment accused Victorick of online solicitation of a member of his household, and the use of a computer, electronic or texting device, the trial court reasonably could have determined that temporarily prohibiting his use of the internet and contact with the victim's family was authorized by article 17.40, even though the conditions necessarily impaired Victorick's freedom to communicate electronically and to associate with his family. *See* Tex. Code Crim. Proc. Ann. art. 17.40.

10

Therefore, we conclude that the trial court did not err in denying the application for writ of habeas corpus. Accordingly, we overrule both issues raised by Victorick in Appeal No. 09-14-00112-CR.

SUFFICIENCY OF THE EVIDENCE

In Victorick's first issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the sufficiency of the evidence to support his conviction of online solicitation of a minor. A person commits the offense of online solicitation of a minor if the person "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." *See* Tex. Penal Code Ann. § 33.021(c). Victorick argues the evidence at trial was insufficient to prove beyond a reasonable doubt that he did "knowingly solicit by text message, K.E., a minor, to meet the defendant, with the intent that K.E. would engage in sexual contact and sexual intercourse and deviate sexual intercourse with the defendant," as alleged in the indictment. Victorick contends that "communicating in a sexually explicit manner with a minor, even if with the intent to arouse or gratify the sexual desire of any person, is legal." He argues the evidence is legally insufficient to establish he violated the statute because the State

11

failed to prove beyond a reasonable doubt that he solicited K.E. to meet him and that he acted with the intent that K.E. engage in sexual contact.

The "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902 n.19; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The jury is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 894; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are

12

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. We may not substitute our judgment concerning the weight and credibility of the evidence for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

> Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt. Under the current standard of review, there is no reason to treat circumstantial evidence of an accused's mental state any differently than circumstantial evidence of other elements. Just as circumstantial evidence is reviewed under the same standard as direct evidence, circumstantial evidence of intent is reviewed under the same standard as circumstantial evidence of other elements.

*Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). "As long as the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Id.* at 523.

In 2013, Victorick was employed as a high school coach and teacher. A year before the events at issue in this appeal, Victorick's wife became concerned that Victorick might have developed a sexual attraction to K.E. His wife noticed that Victorick displayed a keen interest in the possibility that his step-daughter, K.E., might be sexually active and the wife observed what appeared to be inappropriate sexual remarks in text messages from Victorick to K.E. Victorick explained to his wife that he had been "referring to . . . basketball, teaching her how to shoot,

13

dribble better, things of that nature[]" and that is what he meant when he sent K.E. a text message saying that "he could show her things and do things that, you know, some of those boys couldn't." Mrs. Victorick believed her husband, but she put locks on K.E.'s door and she would stay up until Victorick went to bed "to make sure that he wasn't going in there and downloading from her phone[.]" There were times when Victorick was "acting like a jealous boyfriend[;]" for example, once he climbed a ladder to look into a neighboring cul-de-sac to observe K.E. and her boyfriend.

On the date of the offense, Victorick, his wife, and K.E. were attending a graduation party at a friend's home. Victorick was, according to his wife, "drinking excessively" at the party. After K.E. left the party and went to a nearby fast food restaurant with a boy, Victorick sent K.E. a text message asking, "Is your quickly done? Time to get back." K.E. responded, "I'm pretty sure all we did was go get ice cream." The exchange of messages between K.E. and Victorick continued as follows:

K.E.: We need water

Victorick: I.need then & sick me you willl love, where are you! Suck me!

K.E.: Never

Victorick: If you ever. You will h understand how good I I eat p[---]y, let me show you! You will. Love ir!!' Ask the others!!

14

K.E.: F[---] you

Victorick: Please let me eat you you will love, it quit f[---]ing, I love your, miore than you know!

K.E.: F[---]ing for

K.E.: Die[2]

K.E. showed the messages to Victorick's wife, who understood that it referred to oral sex. A few weeks thereafter, K.E. called 9-1-1 about a physical altercation she had with Victorick. During the call, K.E. told the dispatcher that Victorick grabbed her by her hair and shoved her into the furniture, and also that he was "trying to get me to do things with him . . . sexual things."

K.E. testified at trial that she did not believe Victorick was trying to have sex with her, and that she believed he could have sent the messages because he was trying to keep her from having sex with more people. She does remember, however, telling her mother that she was "creeped out" by her stepfather, and she agreed that she called 9-1-1. A clinical psychologist testified for the State. He stated that he had counseled hundreds of children who were victims of sexual abuse. With respect to the Victorick case, he observed the testimony of K.E., reviewed some but not all of the texts between Victorick and K.E, reviewed the statements given by K.E.'s mother and Victorick, and reviewed other items from

---

[2]We use brackets and dashes to note our omission of some letters due to the profane nature of the words.

15

the reports. Further, he testified that abusers often "groom" their victims "[t]o foster that dependence and to foster that trust so that they can not only abuse the child and have access to them, but to the extent that they do harm the child in some way, the child may not tell about it, may even have positive relationships toward the person related to ways that they've been manipulated." The psychologist stated that the testimony of K.E. that she did not want Victorick to get in trouble, or that she did not think the texts were intended to be sexual, or that she blamed herself, would be

> consistent with someone who has been groomed by a suspect, groomed to feel like, to the extent anything bad is happening, it's my fault, rather than the other person's fault, and groomed to take responsibility for that, rather than entertain the idea, which may be a hard idea to entertain, to the extent that a child wants to believe in their father and the goodness of their father and having a good relationship with the father, that can be a lot for a child to give up. And in some cases that I have worked on, they will try to deny or rationalize or even blame themselves for what's happening rather than believe that their father might be trying to hurt them.

A forensic examination of Victorick's phone revealed an exchange of thousands of messages between Victorick and K.E. prior to July 25, 2013. Included within the messages are statements that demonstrate Victorick's sexual interest in K.E.

In his brief on appeal, Victorick further argues that his communications before the date of the offense were not illegal, "no matter how salacious, vulgar,

16

inappropriate or sexually explicit any of the text messages that Mr. Victorick sent before June 2, 2013, may have been[.]" He argues that the text message sent from his phone when K.E. went to the fast food restaurant did not request that K.E. meet him. Victorick contends that his messages, which express a present desire to engage in oral sex, appear to have occurred after K.E. returned to the party because they were made after K.E. asked Victorick for water. The alleged presence of Victorick and K.E. being in the same building at the time Victorick sent the messages would not, however, negate the element of the offense that the person "knowingly solicits a minor to meet another person, including the actor" with the intent that the minor will engage in sexual contact. *See* Tex. Penal Code Ann. § 33.021(c). The jury could have reasonably concluded based upon the content of the messages, as well as the testimony and evidence in the record, that Victorick sent K.E. a text message that solicited K.E., a minor, to meet.

"Meet" is not defined in the statute. "Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally

17

entitled to use." *Id*. Among its commonly understood terms, "meet" means, "to come near or in touch with by approach from another direction" and "in the basic sense pertinent here, [usually] implies no more than to come into the presence or company of whether by chance or design[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1404 (2002). The jury could, using the ordinary understanding of the word "meet," find that Victorick solicited K.E. to meet him, and further that Victorick asked the victim to engage in a sex act that required physical contact between them.

Victorick argues that the text message, "I.need then & sick me you willl love, where are you! Suck me!", does not "solicit" K.E. "Solicit" is not defined in section 33.021 of the Texas Penal Code, and could be understood by the jury by its commonly defined terms, which include, "to approach with a request or plea" and "to endeavor to obtain by asking or pleading[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 2169 (2002). "Suck" is also found in the dictionary, and includes the meaning, "to draw in the mouth over or around an object. . . ." *Id.* at 2283. The part of "me" to which Victorick referred could be understood by the jury to mean his genitals, especially in light of another communication from Victorick to K.E. in which Victorick suggested that they engage in oral sex. The jury could, using the ordinary understanding of the word "solicit," find that Victorick asked or pleaded with K.E. to engage in oral sex.

18

Victorick contends that the evidence is legally insufficient because the mere presence of the text on his phone does not prove that he sent the message because there were college-age students at the party and one of them could have sent the message. The officer who examined Victorick's phone testified that it was password-protected. It was reasonable for the jury to infer that Victorick sent the message. His wife saw him use the phone that night, and Victorick sent sexually explicit messages to K.E. on many other occasions.[3] Because the inference that it was Victorick that sent the message from his password-protected phone was reasonable, the State was not required to exclude the possibility that someone else at the party used Victorick's phone to send the messages to K.E. *See Laster*, 275 S.W.3d at 521, 523.

Viewing the totality of the evidence and inferences in a light most favorable to the verdict, the jury could have reasonably inferred that Victorick sent the messages to K.E. *See Hooper*, 214 S.W.3d at 13. We conclude that the evidence is legally sufficient to support the verdict. Accordingly, we overrule issue one.

---

[3]The testimony and evidence indicated that Victorick—a 58-year-old high school teacher and coach—spied upon K.E. when she was with her friends; he snuck into her room at night while she slept; he used the "notes" function of his cell phone to record his own thoughts regarding her sexual activity and to record his sexual attraction to her; and he sent many other text messages to K.E. that included requests to be permitted to perform what a jury could reasonably conclude were sex acts.

IMPARTIAL TRIBUNAL

In his second issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick argues that the reference to the "victim" in the pre-trial order setting ancillary conditions of bond demonstrates that the trial judge pre-judged his guilt, and establishes that he was deprived of a fair and impartial tribunal, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

The trial court used a pre-printed form that contained several references to the "victim" and "the victim's family" which Victorick argues indicates that the trial court pre-judged his guilt before the trial. The document imposes conditions but includes no factual findings. The document was not prepared for use before the jury, nor is there any indication from the record that the pre-trial order setting ancillary conditions of bond was ever shown to the jury. Additionally, during the trial, when Victorick objected to the prosecutor's reference to the complaining witness as "the victim" the trial court sustained the objection and instructed counsel to use the phrase "alleged victim" and instructed the jury that "any time . . . prosecutor uses the word 'victim,' that you take it as alleged victim." Therefore, we conclude that the record does not support Victorick's claim that the trial court deprived him of the presumption of innocence. We overrule issue two.

20

RECUSAL PROCEDURE

In his third issue in Appeal No. 09-14-00190-CR (appeal of his conviction), Victorick challenges the constitutionality of the recusal procedure contained in Rule 18a(a)(3) and 18a(j)(1)(A) of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 18a. Subsection (a)(3) of Rule 18a provides that a party may not seek recusal of the judge solely on account of the judge's rulings in the case in which his recusal is sought. *Id.* Subsection (j)(1)(A) states that an order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment. *Id.* Victorick argues that Rule 18a unconstitutionally denies a criminal defendant due process "[b]ecause the defendant will have been forced, as was Mr. Victorick, to a trial before a judge who has prejudged his guilt."

"Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. [citation omitted] The burden rests upon the individual who challenges the statute to establish its unconstitutionality" as applied to him. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) (citing to *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)); *Wood v. State*, 18 S.W.3d 642, 650-51 (Tex. Crim. App. 2000). Victorick has not established that the trial court prejudged his guilt. Furthermore, Victorick has not shown that Rule 18a

21

is unconstitutional as applied to him or as applied to some hypothetical third party. Therefore, we overrule issue three.

CONCLUSION

Having overruled all of the issues that have been raised by the appellant in his appeals, we affirm the order denying the application for a writ of habeas corpus and we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 10, 2014
Opinion Delivered December 10, 2014
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

22

# IN THE NINTH COURT OF APPEALS

09-14-00112-CR

Ex Parte David Lee Victorick

On Appeal from the
435th District Court of Montgomery County, Texas
Trial Cause No. 13-11-12323 CR

## JUDGMENT

THE NINTH COURT OF APPEALS, having considered this cause on appeal, concludes that the order of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the order denying the application for a writ of habeas corpus is affirmed.

Opinion of the Court delivered by Justice Leanne Johnson

December 10, 2014

**AFFIRMED**

\*\*\*\*\*\*\*\*\*\*

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court

CAUSE NO. 13-08-09228-CR

RECEIVED AND FILED
At **11 15** O'Clock **A** M.

AUG 30 2013

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By _____ Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V | § | MONTGOMERY COUNTY, TEXAS |
| David Lee Victorick | § | 435th JUDICIAL COURT |

## ANCILLARY CONDITIONS OF BOND

Conditions of bond are hereby ordered to apply to the bond posted by Defendant in the above-referenced cause. Defendant shall:

✓ (1) Commit no offense against the laws of this State or any other State or the United States;

✓ (2) Abstain from the use of alcohol or controlled substances, unless prescribed by a physician;

✓ (3) Avoid injurious or vicious habits, including persons or places of disreputable or harmful character;

✓ (4) Work faithfully at suitable employment as far as possible;

✓ (5) Support his/her dependents;

✓ (6) Remain within Montgomery County, Texas, unless given permission to leave therefrom by the Court or supervision officer;

✓ (7) Submit to the Montgomery County Department of Community Supervision and Corrections (MCDCS) immediately following release from custody and submit to medical, chemical or other test or examination for the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs or any controlled substance or marihuana. Defendant will continue to submit to continued random testing at his own expense at such time and testing may be requested by MCDCS. Any detection of alcohol or controlled substances will be a violation of Defendant's conditions of bond.

(8) Participate in alcohol/drug abuse evaluation and counseling as follows: PER PROBATION DEPT.;

✓ (9) Permit the supervising officer to visit him/her at his/her home or elsewhere;

✓ (10) Report monthly\weekly to the supervision officer as directed by the Judge or supervision officer and pay supervision fee of $40.00 per month to MCDCS;

✓ (11) Observe a home curfew as follows: Remain in his/her residence between the hours of 10:00 p.m. and 6:00 a.m., subject to random telephone calls to ensure compliance;

✓ (12) Notify MCDCS of any change of address, employment and/or telephone within three (3) days;

(13) Install a motor vehicle ignition interlock. Defendant shall comply with all terms of the installation order;

✓ (14) Defendant shall not possess any firearm(s), unless you are a full-time paid peace officer;

✓ (15) Defendant shall refrain from all association, contact, and communication, directly or indirectly, whether in person, by phone, by letter, or through a third party, with the victim or the victim's family or household unless authorized by the Court, Defendant's supervising officer, or court ordered treatment provider;

✓ (16) Not go to or within 100 yards of the residence, place of employment, or business, or child-care facility or school of the victim or any member of the victim's family or household;

✓ (17) Not engage in conduct directed toward the victim or any member of the victim's family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass;

(18) Submit to a polygraph examination on a quarterly basis, at the direction of Defendant's supervising officer, at Defendant's expense, to determine if Defendant is abiding by the terms and conditions of bond;

✓ (19) Other conditions: _Defendant shall have no access to any child under 17 years of age or any computer or internet connection._

SIGNED on ___8\30\13___ .

_____
JUDGE PRESIDING
435TH DISTRICT COURT

_____
SIGNATURE OF DEFENDANT

_____
ATTORNEY FOR DEFENDANT

I, Barbara Gladden Adamick, do hereby
Certify __1__ pages in Cause #13-08-09228-CR
as being a true and correct copy of the
Original Record now on file in the District
Clerk's Office of Montgomery County, Texas.

Witness My Official Seal of Office in Conroe, Texas
On This the ___ Day of December, 2013

By: _____, Deputy

**13**

CAUSE NO. 13-11-12323-CR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V | § | MONTGOMERY COUNTY, TEXAS |
| David Lee Victorick | § | 435ᵗʰ JUDICIAL COURT |

RECEIVED AND FILED FOR RECORD
At __10__ O'clock __A__.M.
NOV 19 2013
BARBARA GLADDEN ADAMICK
District Clerk
by MONTGOMERY COUNTY TEXAS
Deputy

## ANCILLARY CONDITIONS OF BOND

Conditions of bond are hereby ordered to apply to the bond posted by Defendant in the above-referenced cause. Defendant shall:

_____(1) Commit no offense against the laws of this State or any other State or the United States;

_____(2) Abstain from the use of alcohol or controlled substances, unless prescribed by a physician;

_____(3) Avoid injurious or vicious habits, including persons or places of disreputable or harmful character;

_____(4) Work faithfully at suitable employment as far as possible;

_____(5) Support his/her dependents;

_____(6) Remain within Montgomery County, Texas, unless given permission to leave therefrom by the Court or supervision officer; *may live in Cypress with sister & travel to Harris Co. to*

_____(7) Submit to the Montgomery County Department of Community Supervision and Corrections (MCDCS) *visit* immediately following release from custody and submit to medical, chemical or other test or examination for *attorney* the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs or any controlled substance or marihuana. Defendant will continue to submit to continued random testing at his own expense at such time and testing may be requested by MCDCS. Any detection of alcohol or controlled substances will be a violation of Defendant's conditions of bond.

_____(8) Participate in alcohol/drug abuse evaluation and counseling as follows: PER PROBATION DEPT.;

_____(9) Permit the supervising officer to visit him/her at his/her home or elsewhere;

_____(10) Report monthly/weekly to the supervision officer as directed by the Judge or supervision officer and pay supervision fee of $40.00 per month to MCDCS;

_____(11) Observe a home curfew as follows: Remain in his/her residence between the hours of 10:00 p.m. and 6:00 a.m., subject to random telephone calls to ensure compliance;

_____(12) Notify MCDCS of any change of address, employment and/or telephone within three (3) days;

_____(13) Install a motor vehicle ignition interlock. Defendant shall comply with all terms of the installation order;

_____(14) Defendant shall not possess any firearm(s), unless you are a full-time paid peace officer;

_____(15) Defendant shall refrain from all association, contact, and communication, directly or indirectly, whether in person, by phone, by letter, or through a third party, with the victim or the victim's family or household unless authorized by the Court, Defendant's supervising officer, or court ordered treatment provider;

_____(16) Not go to or within 100 yards of the residence, place of employment, or business, or child-care facility or school of the victim or any member of the victim's family or household;

_____(17) Not engage in conduct directed toward the victim or any member of the victim's family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass;

_____(18) Submit to a polygraph examination on a quarterly basis, at the direction of Defendant's supervising officer, at Defendant's expense, to determine if Defendant is abiding by the terms and conditions of bond;

_____(19) Other conditions: *Defendant shall have no contact with any child under 17 years of age, or any computer or internet connection (pro)*

SIGNED on 11/19/13 .

_____
SIGNATURE OF DEFENDANT

JUDGE PRESIDING
435ᵀᴴ DISTRICT COURT

_____
ATTORNEY FOR DEFENDANT 02841600

48